[Civ. No. 16070.   Second Dist., Div. Three.   June 9, 1948.]

FRED GEORGE HUMISTON et al., Respondents, v. ELMER G. HOOK et al., Appellants.

102

Clarence G. Weisbrod and Clarence Hansen for Appellants.

Hindman & Davis and Cobb & Utley for Respondents.

SHINN, Acting P. J.—Defendant Elmer G. Hook appeals from a judgment for damages for the loss of plaintiffs' property through fire allegedly caused by the negligence of defendant. Plaintiffs, copartners, doing business as M. E. Gray Company, maintain a place of business in Huntington Park, where they sell pipe, plumbing supplies and other materials. Defendant operates a machine shop next door. The building, 50 feet in width, was occupied in part by both parties, 40 feet of it by defendant and 10 feet by plaintiff, a partition separating the two portions of the room, and plaintiffs' business extended onto other property. The complaint contained two causes of action. In addition to Hook, others were sued under fictitious names, but no one except Hook appeared in the action. In the first cause of action it was alleged that defendants so carelessly, negligently and unlawfully maintained and conducted their premises as to cause a fire to occur as a proximate result of their acts, which fire destroyed and damaged merchandise, fixtures and equipment of plaintiffs, to plaintiffs' damage in the sum of $57,-199.43. There was an allegation that plaintiffs were out of

business for some time and sustained a further loss of $20,000 by reason thereof. The second cause of action alleged that defendants permitted and maintained on their premises an open vat containing highly inflammable petroleum liquids, contrary to a city ordinance of Huntington Park, and that as a proximate result of defendants' acts done in violation of the ordinance defendants caused said fire to occur. By reference to the paragraphs of the first cause of action the charge of negligence was incorporated into the second cause of action. Defendant answered, denying the negligence and violation of the ordinance, and alleging "that plaintiffs were at all times familiar with and in daily contact with the activities of this answering defendant in the operation of his business" etc. No contributory negligence of plaintiffs was pleaded. Plaintiffs proved that they had sustained the loss of merchandise, fixtures, equipment, etc. to the amount alleged in the complaint, but they offered no evidence as to loss of profits. The court found in favor of plaintiffs on the issues of negligence, proximate cause and damage for loss of the property, and also found that defendants were maintaining their property in violation of an ordinance of the city of Huntington Park, in that they permitted and maintained on the premises an open vat which contained highly inflammable petroleum liquids. It was also found that the fire was started in the open vat by sparks emanating from a grinding machine which was being used on metal. It was further found that there was no evidence that any of the plaintiffs knew that defendant was maintaining the open vat containing inflammable metals and using said grinding machine in the proximity thereof, although plaintiffs' office manager had seen the machine and had seen defendant using said vat for the painting of metal prior to the date of the fire.

Defendant's first contention is that there was no evidence of negligence on his part. The building was approximately 130 feet deep; 90 or 100 feet from the front of the building was a vat, approximately 10 feet long and a foot wide which contained paint and paint thinner. There was usually 7 or 8 inches of paint in the vat. Defendant deposited in the paint the articles he was fabricating and then placed them on a rack above the vat to dry. Thinner was brought into the building in 5-gallon cans and was poured into the vat from time to time as necessary to keep the paint from becoming too thick. Immediately before the fire, defendant was cutting

1⅛- or 1¼-inch-cold-rolled steel rods on a Mercury High Speed abrasive metal cutting machine having a carborundum wheel. The machine is covered by a hood, sparks fly from it when in operation, some of the ground-off material is held in the machine but the greater part of it reaches the floor. The machine was located 25 or 30 feet from the vat. Defendant testified that he had cut off one piece of rod, had stopped and was examining it as to size when he heard ''a sort of a swish like,'' turned around and saw a fire in the paint vat. The vat had paint and thinner in it at the time. No one else was working within 30 feet of the vat when the fire started. Efforts to put out the fire were unsuccessful and it burned all but about 40 feet of the front of the building occupied by defendant and the one occupied by plaintiffs. There was testimony that about 10 per cent of the material thrown off in sparks reached the floor as sparks; defendant testified that during his cutting he saw sparks falling to the floor. A witness for defendant whose company sold the thinner to defendant testified to that fact but did not testify as to the composition of it. Mr. Slocum, chief of the fire department, took a sample of the thinner after the fire but did not have it analyzed. He testified that he had made some study of petroleum products, had seen actual demonstrations at many different institutions which he had attended and had learned that petroleum products give out gas which is inflammable, that he had made studies of the combustion qualities of petroleum products, had found that some paint thinners were easily ignited, that vapors coming from petroleum products in a container located on the ground would be likely to creep along the floor and could be ignited by sparks coming from an emery wheel. He also testified that there are several products besides petroleum products that might have been ignited in the same way, that he had experienced burns from sparks flying from an emery wheel, and that in his opinion a fire in a burning cigarette would not be as likely to cause ignition.

During the direct examination of the witness defendant objected to any testimony he might give on the ground that he had not been shown to be sufficiently qualified to testify on the subject of paint thinners. The court did not rule on the objection and it was developed that the witness who had been with the fire department for 27 years, had made studies of the combustion qualities of petroleum products, and had found that some paint thinners could be easily

ignited by a spark. The objection to his qualifications was not renewed and the matter was gone into at considerably greater length in the cross-examination, during which it was developed that the witness had done some reading on the subject and that his knowledge was based in part upon "seeing the actual demonstrations given by these many, many different institutions that we attended." The direct and the cross-examination of the witness was conducted on the assumption by the witness and by counsel that the paint thinner in question was a petroleum product. At the conclusion of the cross-examination defendant moved to strike out all of the testimony of the witness which he had given as an expert, upon the ground he was not properly qualified and was testifying from hearsay. The motion was denied and the ruling is assigned as error. It was not error to deny the motion. Although defendant objected to the sufficiency of the showing of qualifications of the witness, further evidence was received on that point, no further objection was made and the motion to strike came at the conclusion of the cross-examination. The witness was shown to be sufficiently qualified to testify generally on the subject of petroleum products and paint thinners. Most of his testimony on the subject related to matters which are of common knowledge. He was not asked for and gave no opinion as to whether under the conditions described the fire was caused by sparks from the emery wheel. ██ The sufficiency of the showing of qualifications of a witness to testify as an expert is a matter resting largely in the discretion of the trial court, and its ruling will not be disturbed if there is any substantial evidence to support it. (*Mirich* v. *Balsinger,* 53 Cal.App.2d 103, 114 [127 P.2d 639]; *Johnson* v. *Western Air Exp. Corp.,* 45 Cal.App. 2d 614, 630 [114 P.2d 688]; *Vallejo etc. R.R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 575 [147 P. 238]; *Howland* v. *Oakland C. St. Ry. Co.,* 110 Cal. 513, 521 [42 P. 983].) The ruling as to the qualification of the witness was well within the discretionary power of the court.

██ The evidence, in our opinion, was not insufficient to justify the finding that the fire was started by sparks from the cutting wheel. The witness, Slocum, further testified that on the day of the fire he had a conversation with defendant and the defendant stated that the fire was caused by sparks from an emery wheel, and that he did not know how inflammable the material in the paint vat would be. Mr. Ginsbach,

the chief building inspector, testified that in a conversation he had shortly after the fire, in discussing the conditions in the building, defendant stated that he caused the fire by grinding something on an emery wheel. Although defendant denied that he stated to Slocum or Ginsbach that the sparks started the fire, we must assume that the court believed the testimony of the chief of the fire department and the building inspector. There was at least prima facie evidence that the paint thinner was highly inflammable. ▇ Defendant, who was in a position to prove the composition of the liquid, offered no evidence on the subject. It must be presumed that such evidence would have been adverse to defendant. (Code Civ. Proc., § 1963 (5).) The testimony of defendant that the fire started with a "swish" indicated that the vapors from the mixture were ignited. Defendant offered no testimony to refute that given by the witness Slocum that vapors from petroleum paint thinner are heavier than air and would creep along the floor. Although there was a sparsity of expert testimony on both sides, it was sufficiently shown that the sparks from the cutting wheel could have ignited the vapors, and the evidence disclosed no other conditions to which the fire could reasonably have been attributed. The finding in question is in accordance with the reasonable probabilities established by the evidence.

▇ A further point urged by defendant is that plaintiffs had knowledge that defendant was using the cutting wheel and paint vat, that if the conditions were dangerous plaintiffs should have known it, that they made no objection to these conditions and should be deemed to have acquiesced in them. The contention is that plaintiffs should be held estopped to maintain their action by reason of their failure to complain of the dangerous practices being followed by defendant. The testimony upon which defendant relies is that of Mr. Monahan who was the office manager of plaintiff company. It was not shown to have been any part of the duties of this witness, as office manager, to inspect the premises of plaintiff or surrounding premises for the discovery of dangerous conditions, or that any of the plaintiffs had knowledge of the conditions in question. Neither was it shown that the witness Monahan had any knowledge as to the use of paint thinner by defendant nor as to the existence of dangerous conditions on defendant's premises. It was the duty of defendant, not of plaintiffs, to know whether those conditions were

dangerous and to remedy them if they were. Defendant's statement, "it was the duty of plaintiffs to make known to defendant the existing conditions of plaintiffs' [sic] vat and machinery prior to the time of the fire," is unsupportable as a legal proposition.

The views we have expressed on the issue of negligence render it unnecessary to consider defendant's further point that the evidence was insufficient to prove that the presence and use of the painting vat in the manner in which it was used by defendant, was in violation of any ordinance of the city of Huntington Park.

The judgment is affirmed.

Wood, J., and McComb, J. assigned, concurred.