[Civ. No. 17514.   Second Dist., Div. One.   Oct. 23, 1950.]

Estate of THORVALD JOHNSON, Deceased. LILLIAN L. COMSTOCK, Respondent, v. LEIF N. JOHNSON, Appellant.

Cook & Johnson and Wiley J. Shannon for Appellant.

J. P. Bradley and Howard W. Hunter for Respondent.

WHITE, P. J.—Leif N. Johnson appeals from a decree of the Superior Court of Los Angeles County appointing him and respondent coadministrators of the estate of Thorvald Johnson, also known as Thorvald Johannesen, deceased.

Thorvald Johnson died intestate August 8, 1948. August 10, 1948, respondent Lillian L. Comstock as daughter of decedent petitioned for letters of administration. Shortly thereafter, Leif N. Johnson as son of decedent filed his petition for letters of administration and written objections to the appointment of Lillian L. Comstock upon the ground that she did not qualify as administratrix under section 422 of the Probate Code, inasmuch as she is not a daughter of the deceased but a niece by marriage. The matters were consolidated and upon trial the following facts were established:

Thorvald Johnson, the deceased, was born in Norway; his Norwegian name was Thorvald Johannesen; he came to the United States as a young man and married Anna Johanna Borreson January 22, 1888. In 1895 or 1896, the Johnsons returned to Norway, where they remained some eight years; they were accompanied by Lauritz Borreson, a brother of Mrs. Johnson. Lillian L. Comstock was born December 15, 1896, in Norway to Lauritz Borreson and Alexandra Andersen. In March, 1898, Lauritz Borreson died. By written instrument dated August 22, 1898, an agreement was entered into between Alexandra Andersen and the Johnsons, claimed by Lillian L. Comstock to constitute a legal adoption under the laws of Norway or a contract to adopt. Two translations of said instrument were offered in evidence after testimony by expert witnesses appearing for Lillian L. Comstock and Leif N. Johnson.

The translation of the document as testified to by the expert witness produced by respondent Lillian L. Comstock was as follows:

''I, Alexandra Andersen, give (commit, entrust), my child Anlaug Laurentze Borresen to Thorvald Johannesen and wife, on the condition that the child be reared well and properly in

every way. I waive (relinquish) my right ever to claim (or demand) the return of the child. The child shall be the child of the Johannesens and belong to this married couple as their own.

"We, Thorvald Johannesen and wife, accept (or adopt) said named (or mentioned) child as our own and we declare that we will rear and treat it (the child) well in every respect. (Signed) Alexandra Andersen. (Signed) THV Johannesen, Anna Johannesen. Kristiansand, the 22nd day of August, 1898."

The expert witness offered by appellant Leif N. Johnson testified to the following translation:

"I, Alexandra Andersen, turn over my child Anlang Laurentza Borresen to Thorvald Johannesen and wife on the condition that the child will be brought up good and well in all matters. I write off my right to at any time to have the child given back. The child shall be Johannesens' and belong to this couple as their own. We, Thorvald Johannesen and wife accept this named child as our own and declare that we will bring up and treat it well in every way. Signed, Alexandra Andersen, Christiansand, the 22nd of August, 1898. and signed Thv. Johannesen, Anna Johannesen."

It was stipulated at the trial that respondent Mrs. Comstock lived with Mr. and Mrs. Johnson from August, 1898, until the date of her marriage on June 26, 1920, except for a period when she was away at school, which was less than one year. During that time she was supported by the Johnsons and treated as a member of the family. After her marriage the family relationship continued, consisting of visits back and forth and respondent caring for the Johnsons during times of illness.

Leif N. Johnson was born July 1, 1903, to the Johnsons and in 1904 the Johnsons left Norway with the two children and returned to the United States, settling in California.

Mrs. Johnson, the wife of deceased, died in November, 1935, and the mutual will executed by her and the deceased, and admitted to probate in her estate, referred to Lillian L. Comstock as their daughter.

During the trial, William B. Stern, foreign law librarian of the Los Angeles County Law Library, was called as an expert witness on behalf of Lillian L. Comstock. He testified that he was a graduate of the University of Wuersburg, Germany, where he received his Doctor of Laws and Referendar

degrees covering German law and civil law; that in his capacity as foreign law librarian he was asked questions concerning foreign law, including the law of Norway and had testified as an expert as to foreign law in the Superior Courts of the Counties of Los Angeles, Alameda, and Ventura; in a District Court of Texas, in the Federal District Court for the Southern District of California, and in the Municipal Court of Los Angeles, and that articles written or testimony given by him had been cited by the courts; that he had testified on the law of 20 foreign countries; that he was familiar in general with the law of Norway as it existed on August 22, 1898, and in his capacity as foreign law librarian he had been asked a number of questions on the law of Norway and that he was familiar with the law of Norway in regard to adoption of minors as the law existed on August 22, 1898. He further testified that he had never lived in Norway; that he did not speak the Norwegian language; that he spoke German and at one time could speak Italian, French, and Latin; that he could read Latin, Classical Greek, French, Italian, Spanish, Portuguese, and Dutch, and with the aid of a dictionary, Danish, Norwegian, and Swedish; that he had studied basic low-high German, the basic language of all modern Nordic Languages. He named various sources of reference in English and foreign languages he had consulted pertaining to Norwegian law. He also testified that he could not read the original document in question, since "it is almost impossible for me to read the handwriting here." His testimony as to the law of Norway on August 22, 1898, and its application to respondent's translation of the instrument in question was as follows:

"On that date the law of adoption in Norway was not statutory law. The first statute on adoption having been enacted in Norway in 1917; however, prior thereto there was a customary law of adoption in Norway. In order to understand the force of this customary law, it is necessary to point out that Norway is not a Code country; that after 1842, an effort was made to codify Norwegian law. These efforts, however, have been effective only in part. . . .

"A code was enacted in 1687 for Norway by King Christian the Fifth of Denmark, who then ruled Norway. Norway was under Danish rule from the early 16th century to the early 19th century. This Code of 1687 did not contain any rules on the law of adoption. There was not a Code in our modern sense of the word. It was more a statute dealing with

various subject matters. In Norway in addition to the codified law and later enacted law resort is had, and is still had today, to customary law. Customary law is deemed a custom, either general or local, which is practiced in the conviction that it is a custom with the force of law. Adoption is a custom with the force of law and has been known in Norway as far back as we know Norwegian law.

"In the 12th century four Codes called things, t-h-i-n-g-s, were enacted in Norway which a century later were supplemented by King Magnus. These codes were not codes in the modern sense of the word. They were restatements of the then customary law. The law of adoption can be found in these codes. As a matter of fact, in these early times adoption was practiced by the adopting and the adopted person stepping together into a shoe made out of ox skin. Adoption originally in Norway was what we would call legitimatization of illegitimate children. . . .

". . . by the 12th century when these codes had been supplied, adoption had been an institution which established a true family relationship, not only between the adopting person and the person to be adopted, but also between the person to be adopted and the family of the adopting person . . .

"Adoption as a contract between the parties was practiced through the centuries, and including through the 19th century, an early 20th century as customary law.

"Q. By Mr. Hunter (attorney for respondent): Now, Mr. Stern, I show you an instrument entitled Petitioner Comstock's Exhibit 2 which purports to be an instrument written in Norwegian, and attached hereto is a translation of the instrument. I will ask you to read that translation and state whether or not the wording of that instrument would be sufficient under your study of the Norwegian law to constitute an adoption as of the date it bears.

"The Witness: This is a contract which contains all of the important elements of the contract of adoption under Norwegian law."

Trial of this matter commenced March 25, 1949, and continued March 28th, March 29th, March 30th, and May 10th. On March 30th counsel for Leif N. Johnson requested a stipulation on "taking a deposition from someone over in . . . Norway.

"The Court: Well, it would have to be on oral interrogatories. I don't want to put counsel to the expense at this time.

That will take a long time to get anything of that sort back.

"MR. HUNTER: If we are going to start those operations we are not going to get an administrator until 1952.

"THE COURT: I haven't any application for deposition, so I am not going to rule in advance."

At the commencement of proceedings on May 10th, after the continuance from March 30th, the following took place:

"MR. JOHNSON (attorney for appellant): If your Honor please, the contestant Leif N. Johnson moves for a further continuance on the grounds that we have been unable to make arrangements to take depositions in Norway, and we wrote to the U. S. Embassy there and sent a copy of the purported, or that document, the exhibit—I don't exactly remember—the one that they claim is an adoption paper; and we received a letter back on April the 7th, and they referred us to the Department of Justice and Police. This is what they say: 'Adoption matters in Norway come under the jurisdiction of the Department of Justice and Police, and in order to get an authoritative opinion, it would be necessary to refer the document to that office.'

"We sent it back and asked them to refer it to that office. They said it would take considerable time, and as the letter appeared to be urgent, the Embassy referred it to a lawyer, and I have been awaiting ever since, thinking that I would get a reply, and have not yet received one and I believe that it would be more satisfactory to everyone concerned if depositions could be taken. I believe we could get them in another 30 days, or whatever the court sees fit.

"MR. HUNTER (attorney for respondent): Well, it appears to me that such a motion is out of order, if your Honor please. When we concluded this matter before, that is, when we concluded the testimony in this matter both sides rested, except for the matter of introducing testimony as to the date of death of the natural father. As I recall, your Honor said that you would continue this matter for a period of two weeks. There has been one continuance since then; but you would continue the matter for two weeks to allow us time to see if it was possible to obtain any evidence as to the date of death, and that is the only matter remaining undone. Now, do I understand counsel's motion to be that he wants to reopen the matter?

"MR. JOHNSON: No, I think that it was understood that at that time, your Honor, both of us might want to take depositions.

"MR. HUNTER: As to the date of death."

Following further discussion, the court stated:

"I wouldn't continue it for that purpose, because it is simply legal opinion which can be obtained here in the United States, and it isn't necessary to take a deposition in Norway from some chief of police or somebody else, or some police department, to determine the value and effect of a legal document. It is a question of producing expert testimony, and that can be done here as well as by deposition. . . . I will deny the request for a continuance."

The trial court found that Lillian L. Comstock is the adopted daughter of deceased and that the instrument of August 22, 1898, "is sufficient as a contract to entitle petitioner Lillian L. Comstock to inherit as though she were a natural daughter and to letters of administration."

Motion for a new trial by contestant Leif N. Johnson was denied on the ground that the affidavit in support thereof was not filed within the statutory time.

Appellant urges error on the part of the trial court in its findings as to the effect of the instrument in question. Both parties agree that the status of an adopted child is determined by the laws of the state or foreign country in which the adoption was effected; that such laws must be alleged and proved as facts; and that in the instant case proof of unwritten law was involved. Appellant then contends that respondent failed to prove the unwritten law of Norway under section 1902 of the Code of Civil Procedure, inasmuch as Mr. Stern lacked qualifications to testify as an expert on the unwritten law of Norway, never having resided in Norway and observed the customs of the country.

The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a clear abuse of that discretion the ruling of that court will not be disturbed on appeal (10 Cal.Jur. 963; 5 Cal.Jur. 10-Yr.Supp. 1944 Rev. 693 and cases there cited), nor will the ruling be disturbed if there is any substantial evidence to support it (*Humiston* v. *Hook*, 86 Cal.App.2d 101 [194 P.2d 122]). In view of the qualifications of Mr. Stern as hereinabove set forth, this court cannot say as a matter of law that a clear abuse of discretion occurred in the trial court. And while residence within the jurisdiction of Norway and firsthand observation of the customs of the country might go to the weight of Mr. Stern's testimony,

it does not go to its admissibility and the position of appellant that the lack thereof disqualified Mr. Stern as an expert witness is untenable.

As already pointed out and as agreed by both parties, unwritten laws of a foreign country are questions of fact. And under familiar rules, findings of fact by the trial court based upon substantial evidence may not be disturbed on appeal (McKinney's New Cal. Digest, "Appeal and Error," § 1273 and cases there cited).

In view of the above holdings as to the qualifications of the expert witness and the rule concerning substantiality of the evidence, the further contentions of appellant based on the premise that the law of Norway pertaining to adoption was not established need not be considered.

The final contention of appellant is also untenable, namely, that it was a prejudicial abuse of discretion on the part of the trial court to refuse to grant him an extension of time to take depositions of qualified persons in Norway to show that the instrument in question was not a valid adoption. Appellant had notice of the existence of the written agreement more than six months prior to the date trial was commenced. Furthermore, in view of what transpired at the trial as hereinabove set forth relative to the motion for continuance, it cannot be said that there was an abuse of discretion on the part of the trial court in refusing to grant the motion.

The decree is affirmed.

Doran, J., and Drapeau, J., concurred.