282 P.2d 452 (1955)
In the Matter of the ESTATE of Joe SPOYA, Deceased.
Arnold H. Olsen, Attorney General, Appellant,
v.
Rafo IVANCEVIC, Counsel General of Federal People's Republic of Yugoslavia, in his representative capacity as Attorney-in-fact for Rose Spoya, et al., Respondents.
No. 9266.
Supreme Court of Montana.
Submitted January 13, 1955.
Decided April 5, 1955.
Rehearing Denied April 18, 1955.
*453 Arnold H. Olsen, Atty. Gen., Mr. J.J. McCaffery, Jr., Sp. Asst. Atty. Gen., J. J. McCaffery Jr., Sp. Asst. Atty. Gen. argued orally, for appellant.
Michael E. Ruane, Anaconda, Peter A. Schwabe, Haas & Schwabe, Portland, Or., Michael E. Ruane, Anaconda, Peter A. Schwabe, Portland, Or., argued orally, for respondent.
ANGSTMAN, Justice.
Joe Spoya died testate on the 8th day of May 1949, a resident of Missoula County. By his will he devised and bequeathed certain described property to certain named residents of Montana and then bequeathed a bank account in the Western Montana National Bank of Missoula, share and share alike, to six nieces residing in the Republic of Croatia, which forms with other territories the Republic of Yugoslavia.
The only question here involved is whether the nieces may take this bequest. The question arose on the petition of the executor for distribution of the estate. The district court ruled that they are entitled to receive it and the state has appealed from the judgment. Judge Taylor we are told in the brief of respondent reached the same conclusion in another case on substantially the same evidence.
The first contention of the state is that the court erred in overruling its objection to the filing of an appearance on the part of the consul general of Yugoslavia for the foreign heirs. The court did not err in this respect. There was filed without objections powers of attorney signed by all the foreign heirs appointing the consul general their attorney. The power of attorney was acknowledged before the president of the district court, an officer authorized to administer oaths.
*454 The consul general, Rafo Ivancevic, also testified as a witness. He testified that he is appearing in his official capacity as representative of the six nieces; that he has powers of attorney from them and that they all reside in Croatia. He testified without objection that Yugoslavia grants rights of inheritance to heirs or beneficiaries who are residents and citizens of the United States out of estates of persons who die in Yugoslavia and whose estates are in Yugoslavia. He testified that if the court were to decree the bequest to the nieces they would receive the entire bequest.
There was sufficient evidence to establish the existence and identity of the legatees. The testator named them in his will. All the other beneficiaries under the will who reside in Montana filed a stipulation that the named legatees of the bank account are residents of Yugoslavia and that they are entitled to share in the estate. The court properly permitted the consul general to enter an appearance on behalf of the foreign heirs.
The next contention of the state is that the court erred in receiving over the state's objection evidence of reciprocity. Specifically the state contends that before an estate may be distributed, as was sought by the petition here, there must have been a judicial determination of heirship which concededly had not been had.
The state relies on subdivision 6 of section 91-520, R.C.M. 1947, which came into the statute by an amendment made by Chapter 31, Laws of 1951. It reads: "No estate in which alien heirs, devisees and/or legatees have a distributive share shall be considered to be in a condition to petition for final distribution, unless, the court enters a written order in such estate decreeing that an action for determination of heirship has been instituted in which the State of Montana was made a party-defendant and that a decree determining heirship has been entered and filed in said action."
Since this statute treats of devisees and legatees, as well as heirs, it seemingly was the legislative intent to have it apply to an estate passing by will as well as by the laws of succession in case of intestacy, and this notwithstanding that the testator and not the court determines who shall take the estate of testator. However, since the estate passed at the time of death which was in 1949, this amendment made in 1951 can have no application to this estate. In re Nosen's Estate, 118 Mont. 40, 162 P.2d 216; In re Gaspar's Estate, 128 Mont. 383, 275 P. 2d 656.
Furthermore at the time of the death of testator R.C.M. 1947, § 91-3901, provided: "Whenever all the heirs or devisees of any estate who are residents of the United States shall agree that any nonresident of the United States is a lawful heir or devisee of said estate and is lawfully entitled to share therein, said agreement may be reduced to writing and filed with the clerk of the court in the matter of said estate, and thereafter it shall not be necessary for any such nonresident heir or devisee to institute any proceedings to determine his rights of heirship." In 1951 the last above quotation was designated as paragraph 2 of section 91-3901, supra, and paragraph 3 was added reading: "The provisions of subdivision 2 shall dispense with the proceedings provided for by section 91-3801, insofar as such section relates to establishing heirship, but shall not dispense with the necessity of establishing proof of reciprocity as required in estates in which nonresident aliens are claiming as heirs, legatees and/or devisees." Paragraph 3 simply states what the rule would have been without it so far as proceedings to determine heirship are concerned.
On the issue of reciprocity the testimony of William B. Stern was relied on, which was to the effect that an American citizen is permitted to take by inheritance property of an estate of one dying in Yugoslavia, and the state contends that the evidence given by him was inadmissible.
It was sought to qualify the witness to give oral testimony of the laws of Yugoslavia under R.C.M. 1947, § 93-1001-14, reading: "The oral testimony of witnesses skilled therein is admissible as evidence of the unwritten law of a sister *455 state or foreign country, as are also printed and published books of reports of decisions of the courts of such state or country, or proved to be commonly admitted in such courts."
R.C.M. 1947, § 93-1001-11, defines unwritten law as follows: "Unwritten law is the law not promulgated and recorded, as mentioned in section 93-1001-8, but which is, nevertheless, observed and administered in the courts of the country. It has no certain repository, but is collected from the reports of the decisions of the courts and treatises of learned men."
It was shown that William B. Stern is the foreign law librarian of the Los Angeles County Law Library. He studied law at Wuerzburg, Munich and Berlin, Germany, from 1928 to 1932. He received a degree of Doctor from the University of Wuerzburg. For about a year and a half he was in the Bavarian state service for jurists. Later he served as clerk in his father's law office for about six months. He came to America in 1935 and entered the University of Texas, and later that same year became a graduate student in the political science department of Johns Hopkins University in Baltimore, Maryland. In January 1937 he became an employee at the University of Chicago Law Library, where he served until April 1939. The Los Angeles library has about 200,000 volumes, about one-half of which are books on foreign law. Mr. Stern has been subpoenaed in numerous cases to testify on foreign law in courts in California and Oregon. He has also been retained as an expert on foreign law questions by the attorney general of California and particularly on questions of reciprocity with various European countries. He has studied the subject of reciprocity of inheritance rights concerning a number of countries including Yugoslavia and concerning the procedure of courts in Yugoslavia. He testified that he is the Dr. Stern who testified as an expert in the case of In re Miller's Estate, 104 Cal. App.2d 1, 230 P.2d 667. Contention is made by the state that before a person can be an expert in the field of foreign law he must have been admitted to practice law in some jurisdiction, and the record shows that Dr. Stern was not admitted to practice in any jurisdiction. This contention is not well taken.
It was made in the case of In re Estate of Faber, 168 Cal. 491, 143 P. 737, 739, and the court disposed of it by saying: "The court sustained an objection to this question, and refused to allow him to testify further on the subject, basing the ruling upon the proposition that the laws of a foreign country cannot be proven by the testimony of a witness who was not engaged in the practice of law therein. In this we think the court erred. Section 1902 of the Code of Civil Procedure provides that: `The oral testimony of witnesses skilled therein is admissible as evidence of the unwritten law of a sister state or foreign country.' It does not declare that such witness must be engaged in the practice of the law in such country, or as a professor of law therein. It is sufficient if it appears that he was skilled therein." To the same effect is Murphy v. Bankers Commercial Corp., D.C., 111 F.Supp. 608.
In holding that Dr. Stern was sufficiently qualified to testify as an expert on the laws of Norway in the case of In re Johnson's Estate, 100 Cal. App.2d 73, 233 P.2d 105, 109, the court had this to say: "The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a clear abuse of that discretion the ruling of that court will not be disturbed on appeal, 10 Cal. Jur. 963; 5 Cal. Jur. [10-Yr.] Supp. [1944 Rev.] 693 and cases there cited, nor will the ruling be disturbed if there is any substantial evidence to support it. Humiston v. Hook, 86 Cal. App.2d 101, 194 P.2d 122. In view of the qualifications of Mr. Stern as hereinabove set forth, this court cannot say as a matter of law that a clear abuse of discretion occurred in the trial court. And while residence within the jurisdiction of Norway and first-hand observation of the customs of the country might go to the weight of Mr. Stern's testimony, it does not go to its admissibility and the position of appellant that the lack thereof disqualified Mr. Stern as an expert witness is untenable."
*456 We have held that a person need not be licensed to practice medicine in this state in order to testify as an expert. State v. Harkins, 85 Mont. 585, 281 P. 551. The court did not abuse its discretion in admitting the testimony of Dr. Stern.
The state contends that the court erred in overruling its objection to exhibits 1, 3, 4, 6, 7, 8 and 9, admitted for the purpose of showing reciprocity. Exhibit 1 was a photostatic copy of portions of the Constitution of the Republic of Yugoslavia with a certificate by Dr. Sergije Makiedo by direction of the ambassador counselor that the translation from the Serbo-Croat language into English is true and correct to its original text.
The department of state of the United States certified that Dr. Sergije Makiedo was a consular of the embassy of the Federal People's Republic of Yugoslavia at Washington. The record shows that originally a certified copy of the entire Constitution of 1946 was introduced. Respondent asserts that it was certified to by the Minister of Justice of Yugoslavia. This original exhibit by agreement was withdrawn and Articles 18 and 80 of the Constitution as above certified to were substituted.
It was not error to receive in evidence the portions of the Constitution of Yugoslavia relied on. The only portions of the Constitution involved were those providing that "inheritance of private property is guaranteed. The right of inheritance is regulated by law." These were relied on and proved substantially as here in In re Arbulich's Estate, Cal. App., 248 P.2d 179.
Exhibits 3 and 4 introduced over the state's objection were certificates made by Sava N. Kosanovic, the ambassador extraordinary and plenipotentiary of Yugoslavia to the United States to the effect that the Constitution and laws of Yugoslavia and treaties between Yugoslavia and the United States accord to citizens of the United States the reciprocal right of inheritance equal to those accorded to citizens of Yugoslavia. Error is assigned in the admission of these exhibits. They were properly received in evidence. In re Blak's Estate, 65 Cal. App.2d 232, 150 P.2d 567; In re Arbulich's Estate, supra. In the last cited case the ambassador was also called as a witness but that was for the purpose of obtaining evidence not contained in the certificates. His oral testimony was not the cause for admiting the certificates in evidence. The certificates there considered were identical with those here involved.
The state next contends that it was error to admit in evidence over its objection exhibit No. 9. This exhibit is a copy of a decision rendered on August 18, 1949, by the Supreme Court of the Federal People's Republic of Yugoslavia at Belgrade. It is certified as a true copy in the Serbo-Croat language by the Yugoslav minister of foreign affairs. The translation into English was certified to be correct by the counselor of the Yugoslav Embassy in Washington, Mirko Sardelic, and there is attached a certificate by the department of state at Washington that Sardelic was the counselor to the Yugoslav Embassy when he made the certificate. The decision affirms the right of citizens of the United States to inherit property in Yugoslavia. There was oral testimony that the Supreme Court of Yugoslavia renders advisory opinions without having parties litigant before it and that is the character of the judgment in question. This exhibit did not meet all the requirements of R.C.M. 1947, § 93-1001-19, as to the admissibility of foreign records since it does not contain the seal of the court or the signature of the legal keeper of the original, but it was not prejudical error to receive the exhibit since there was ample evidence without it to sustain the reciprocity issue.
Exhibits 10, 11 and 12 are certified copies of decisions of district courts showing in substance that in the cases under consideration American citizens either inherited property from the estate of one dying in Yugoslavia or the decisions otherwise respected property rights of American citizens in property in Yugoslavia. These exhibits contained the seal of the court properly authenticated and were in substantial *457 compliance with R.C.M. 1947, § 93-1001-19, and hence properly received in evidence.
The state contends that the court erred to its prejudice in overruling its objections to exhibit No. 12A. Exhibit 12A was a receipt in the form of a letter signed by Lucy Ninkovich residing at Sanger, California, being the widow and sole surviving heir of Tom Ninkovich, deceased, acknowledging receipt of $577.82 from the consul general in Yugoslavia and referred to in exhibit No. 12 which was a court decree of a Yugoslavia court. Consul general Ivancevic testified that in the course of his official duties he remitted the sum of $577.82 in American dollars to Mrs. Ninkovich on August 14, 1951, and that he received exhibit 12A in the regular course of the mail. The court did not err in admitting this letter in evidence. While ordinarily a letter is not admissible in evidence without proof of its authenticity, a well recognized exception to this rule is where a letter is received in due course of mail in reply to another communication proved to have been sent to the purported author of the letter sought to be introduced in evidence. 32 C.J.S., Evidence, § 706b, p. 609; 20 Am. Jur., Evidence, § 956, p. 806.
The state next contends that the court erred in receiving exhibit 14 in evidence. Neither exhibit 13 nor 14 is before us. We are told in one or the other of the briefs that exhibit 13 was a copy of a decree of the district court at Orebic, Croatia, Yugoslavia, entered February 24, 1940, adjudging two sons and a daughter to be the heirs of Mate Vodopic who died in America on January 11, 1934, leaving real estate in Yugoslavia. The decree was not properly authenticated and it was not admitted in evidence until and unless it was further certified. Exhibit 14, we are told, is a copy of the records in Yugoslavia showing that pursuant to the decree of the court, title to the real property had been transferred and recorded in the names of the two sons and daughter residing at Ferry, South Dakota. It was conceded that this record was not properly certified and legalized, but that further proof would be made before decision should be made by the court. This we are informed in the respondent's brief was done but since the exhibits are not before us we cannot rule upon their admissibility. Whether admissible or not, there was ample other evidence in the record to sustain the ruling made by the trial judge, and if error were committed in admitting exhibit 14 it was harmless.
Complaint is made that exhibit 19 was admitted over the objection of the state. This exhibit was a copy of the Yugoslav Foreign Assets Law of 1946. It was certified as being a correct translation of the law into English from the Serbo-Croation text. Dr. Stern explained that this law as published in the official Gazette of the Yugoslav Government constituted the law of Yugoslavia covering the subject of foreign funds control. The court properly admitted this exhibit in evidence.
The state made objection to other exhibits that were received which tended to prove reciprocity. No useful purpose would be subserved in passing upon the question whether the court erred in admitting them. There was ample evidence, without the exhibits complained of, to prove reciprocity and were we to say that some of such exhibits were inadmissible, still we would have to say that the rulings were harmless since reciprocity was otherwise amply proven to make out a prima facie case to sustain the court's ruling. There was no evidence to the contrary.
There being no conflict in the evidence, and finding substantial, credible and sufficient evidence in the record in support thereof, we may not interfere with the trial court's findings and judgment. It becomes unnecessary in this case to say what this court may do in an equity case under section 93-216 where the evidence is conflicting or where there is room for different conclusions by the trier of the facts, a subject comprehensively discussed in Volume XII, pages 36 et seq. of the Montana Law Review, and the late cases of Bond v. Birk, 126 Mont. 250, 247 P.2d 199; Sanders v. Sanders, 124 Mont. 595, 229 P.2d 164; Miller v. Miller, 121 Mont. 55, 190 P.2d 72, and other cases.
The judgment is affirmed.
*458 ANDERSON and DAVIS, JJ., concur.
ADAIR, C. J., dissents.
BOTTOMLY, Justice (dissenting).
I dissent. Neither the heirship nor the rights to inherit of the foreign subjects who claim to be decedent's heirs, has ever been lawfully established in this proceeding. There is no competent evidence to prove that the foreign claimants are decedent's nieces and as such entitled to take decedent's property.
I find in the record on this appeal no competent proof of reciprocity between the United States and the communist country of Yugoslavia, as is required by R.C.M. 1947, § 91-520, which is here controlling, and which declares the public policy of Montana in a proceeding such as this. The legislative intent in enacting this statute was to prohibit the sending of money from Montana to countries with which there exists no reciprocity.
The burden was on the respondents to establish by competent proof that there is reciprocity between the United States and the communist controlled country of Yugoslavia and this, in my opinion, the respondents have failed to do. In re Braier's Estate, Sur., 108 N.Y.S.2d 417, on appeal 305 N.Y. 148, 111 N.E.2d 424, Bottomly v. Meagher County, 114 Mont. 220, 133 P.2d 770; In re Braun's Estate, 161 Or. 503, 90 P.2d 484.
The majority opinion considers that the testimony of the witness William B. Stern of Los Angeles, California, qualifies him as an expert on the present laws of Yugoslavia, and such witness, over timely objection, was allowed to testify at length as to the present laws of Yugoslavia. In my opinion this witness did not qualify as an expert on the present laws of Yugoslavia and the trial court erred in admitting his testimony.
The main qualification of the witness appears to be that he is employed as a foreign law librarian in the Los Angeles County Law Library. He is not an attorney or counselor at law of this or any other country. He never practiced law nor did he ever teach or study law in the Federal People's Republic of Yugoslavia. How then may such a witness qualify as an expert on the present state of laws in such foreign country?
The majority opinion stresses the fact that the respondent, Rafo Ivancevic, Consul General of Federal People's Republic of Yugoslavia, has what he claims to be a power of attorney from each of the nonresident, foreign claimants, and that such documents bring the case within the provisions of R.C.M. 1947, § 91-3901, but such provisions relate only to agreements between the decedent's resident and nonresident heirs and the provisions have no application to a proceeding such as this where the State of Montana is interested in seeing that the right of the nonresident heirs to the shares claimed be clearly established in both fact and law or that such shares in the estate escheat to the school funds of Montana. It is hornbook law that the rights of the sovereign State of Montana may not be frittered away by private stipulation entered into by private parties all claiming adversely to the state's interests, nor may the rights and interests of the state be divested by such a proceeding. See section 2 of Article XI of the Constitution of Montana. Until the requirements of Montana's statute have been fully and fairly met the cash and funds of this estate should remain in and with the State of Montana. For these reasons the judgment of the district court should be reversed.
ANDERSON, ANGSTMAN and DAVIS, Justices.
We are compelled by what is said in the dissenting opinion of Mr. Justice Bottomly to make the following comments:
We are at a loss to know what Mr. Justice Bottomly means by the statement, "the communist controlled country of Yugoslavia." Nothing can be gathered from the record before this court which suggests that any such a reference should be made, and if the statement means as it must be intended to mean, viz.: that the government of Yugoslavia is irresponsible, then it is indeed inappropriate for a member of this court *459 to attempt such an inference in view of the happenings of the day. The United States government and governments of other countries of the West are giving economic aid to Yugoslavia, and the diplomatic intercourse between the United States and Yugoslavia has recently involved higher ranking officials of both countries, and the hopes of the United States are to keep Yugoslavia this side of the Iron Curtain.
Such a possible inference belies the integrity of the diplomatic and economic functions of our Federal Government.