347 P.2d 467 (1959)
In the Matter of the ESTATE of Tony GINN, also known as Anthony Ginn, Deceased.
Arnold H. OLSEN, Attorney General, Objector and Appellant,
v.
Branko KARADZOLE, Consul General of Federal People's Republic of Yugoslavia, in his representative capacity as Attorney-in-Fact for Milica Veraja, et al., Petitioners and Respondents.
No. 9867.
Supreme Court of Montana.
Submitted October 16, 1959.
Decided November 27, 1959.
Rehearing Denied December 29, 1959.
*468 J.J. McCaffery, Jr., Nicholas A. Rotering, Butte, for appellant. Nicholas A. Rotering argued orally.
Wuerthner & Wuerthner, Great Falls, Peter A. Schwabe, Portland, Ore., John P. Wuerthner, Great Falls, for respondents. John P. Wuerthner and Peter A. Schwabe argued orally.
HARRISON, Chief Justice.
Tony Ginn, a resident of Cascade County, Montana, died intestate on May 30, 1955. In the course of administration of his estate a petition for final distribution was filed, alleging that the heirs consisted of a brother in Oregon, a sister in the Canal Zone and three sisters, a brother, and five children of a deceased brother, all of whom resided in Yugoslavia.
The State objected to distribution and denied that reciprocity of inheritance or reciprocity of transfer existed between the United States of America and Yugoslavia. An order determining heirship was entered on August 15, 1956, following the filing with the court of a certificate and consent executed by the heir residing in the United States.
On January 24, 1957, a petition for determination of reciprocity of inheritance rights was filed on behalf of the heirs residing in Yugoslavia, and at the conclusion of the hearings thereon a judgment and decree was entered in favor of the nonresident heirs in Yugoslavia, to the effect that reciprocity of inheritance and reciprocity of transfer existed as of the date of death. The State of Montana appealed from this judgment and decree.
The State contends that the district court was in error in finding that reciprocity of inheritance and transfer existed between the United States and Yugoslavia at the date of death; in finding that reciprocity was proven in an amount in excess of $2,097.74; in overruling the State's objections to certain exhibits offered by the petitioner; and that the evidence is insufficient to sustain the judgment and decree.
It is admittedly true that the burden was upon the foreign heirs under the provisions of section 91-520, R.C.M. 1947, as amended, to establish proof of reciprocity. The State contends that the entire proof required under subdivision 2 of said section 91-520 was based upon the testimony of one Sava Temer, Consul General of Yugoslavia, located in San Francisco. It might be well at this point to set forth the qualifications of Mr. Temer. A law graduate of the University of Belgrade in 1936, he served at the court and practiced law in Zarenianin, Yugoslavia, for about four years until World War II. After the war he entered government service, first going to Germany, and then to a post in the office of the Legal Advisor of the Secretariat of State for Foreign Affairs. There for several years he was a treaty specialist. Appointed Consul on June 24, 1955, for Yugoslavia with his headquarters *469 at San Francisco, California, with jurisdiction over the western states, including Montana. In such position, he is concerned with the legal problems of the Consulate, the bulk of which concern inheritance cases. The State contends by reason of his official government position that Mr. Temer is an interested witness. One can easily understand that the witness would be interested in protecting the rights of citizens of his government, but that would not disqualify him as a witness and goes merely to the weight to be given his testimony. He would be competent to give testimony under the provisions of section 93-1001-14, R.C.M. 1947. The State met the testimony of Mr. Temer with that of Henri Verstappen, but it is obvious that this witness' personal knowledge was gained prior to the middle of the year 1952, and such information as he had since has been communicated to him by others.
The court was very liberal in respect to Verstappen's testimony, a great deal of which was hearsay, and irrelevant for any purpose in this case. In any event the testimony of Verstappen did not convince the district court that the testimony of Temer, based as it was upon a multitude of documents, should be disbelieved, nor has it convinced us. An examination of the record and exhibits in this cause, together with the opinion of this court in In re Spoya's Estate, 129 Mont. 83, 282 Pac. (2d) 452, convinces us that the petitioner established proof of reciprocity, as required by our law, by substantial, credible and sufficient evidence.
As to the second specification of error, being that the district court erred in finding that reciprocity of inheritance and transfer was not proven in an amount in excess of $2,097.74. Once reciprocity has been proven there is no limitation as to the amount, but even considering the State's argument, it appears that this contention is based upon the fact that a receipt was produced indicating that one Ronay received $2,097.74 as his inheritance from an estate in Yugoslavia. The State alleges, therefore, that it cannot be contended that any amount in excess of this sum has ever been received by a United States citizen from a Yugoslavia estate. To establish this contention the State asserts that Exhibit No. 19 indicates the value of the estate was 1,505,220 dinars, and at the official rate of exchange the estate would be of a value in excess of $5,000. Exhibit 20, the receipt, is an acknowledgment by the heir that he received the sum of $2,097.74 as all the cash presently available from the estate in Yugoslavia. Exhibit No. 19 indicates that the estate consisted of two parcels of real estate valued at 1,500,000 dinars, together with a long list of chattels. The exhibit further contains this language: "Pursuant to the aforegoing, the court proclaims the decision concerning the remittance of the court deposit and the delivery of the watch and ring, executory, and the decision concerning the transfer of the remainder of the inheritance will become executory upon the payment of the succession duty." It appears to us that this means that the court ordered the administrator to remit the cash money of 5,200 dinars and the decedent's silver watch and ring to the heir and that part of the estate would be then distributed, and that as to the remainder of the estate it would be distributed upon the payment of the succession duty, which in another paragraph of the exhibit the heir is invited to pay within 15 days of the day he receives the order to do so. Temer testified that the American heir may do anything he wants with the land in Yugoslavia, sell it, keep it, rent it, whatever he wishes. Even if we assumed there was a limit we do not see that the evidence in this cause can be construed as contended by the State, since it is apparent there was further property not capable of transmittal at the time.
Specification of error No. 3 goes to the overruling of the State's objection to plaintiff's exhibit No. 8. This document is a certificate executed by the Minister of Justice of Yugoslavia, the genuineness of his signature is authenticated by the Minister *470 of Foreign Affairs of Yugoslavia, and carries the standard legalization of the document by the United States Embassy at Belgrade. This exhibit was admissible under subdivision 8 of section 93-1001-30, R.C.M. 1947.
Specification of error No. 4 covers the overruling of the State's objection to plaintiff's exhibit No. 9. This document is a statement referring to the treaties between Yugoslavia, Czechoslovakia and Poland by the vice president of Yugoslavia, who at the time he executed the document was also Minister of Foreign Affairs. It was objected to on the ground it had no relevancy to any matter involved in this case. However, while standing alone it might be said that such would be the case, but taken with the other documents introduced it was merely cumulative, and indicated the relations between the countries mentioned and the testimony indicated that such treaties were still in full force and effect. There was no error in admitting this document.
As to specification of error No. 5, which covers Exhibit No. 10, being an advisory opinion of the Supreme Court of Yugoslavia. This same exhibit was received in evidence in In re Spoya's Estate, supra (129 Mont. 83, 282 Pac. (2d) 456), and what is said in that case is equally applicable here. We there stated "it was not prejudicial error to receive the exhibit since there was ample evidence without it to sustain the reciprocity issue." That same situation clearly appears in this case.
Coming down to the final specification of error, being No. 6, that the evidence was insufficient to sustain the judgment and decree in favor of the respondent.
It would unduly burden this opinion to set forth provisions of the documents introduced by respondent to sustain their burden of proof, suffice it to say that in our opinion it was ample. The copies of decrees of Yugoslavia courts before us find that reciprocity exists between the United States and that country and based on such finding further provide for distribution of property located in Yugoslavia to American heirs.
Other than questioning the veracity of the expert testimony of respondents and the authentication of documents offered in evidence the State has offered no contrary evidence.
Finding there is substantial, credible and sufficient evidence in the record to support the judgment and decree of the district court, it is affirmed.
One matter should be referred to in this case. The transcript on appeal consists of two volumes totaling 514 pages. The judgment roll occupies 45 pages, the testimony 182 pages, and 287 pages are devoted to copying exhibits. Of these 287 pages, but 88 are legible, 199 pages reproduced by photocopy method are illegible and a large percentage thereof in addition to being illegible is in a foreign language. Of the 88 pages of exhibits which are legible 35 pages consist of reproduction of printed pamphlets.
The rules of this court with regard to incorporation of exhibits in the transcript were not intended to countenance the wholesale reproduction therein of printed matter, illegible and foreign language documents. In this case counsel found it necessary to bring to this court all the original exhibits because of the state of the transcript. The reading of the testimony herein has presented a task which we should not be required to undertake, interspersed as it is by this voluminous reproduction of illegible material.
That this situation does not again occur an order has been this day entered by this court providing that when it is desired that exhibits be made a part of the record on appeal to this court they shall be authenticated by a certificate of the judge of the trial court thereon or attached thereto and brought to this court in their original form.
We have been liberal in allowing the reproduction of material by photocopy or similar methods, but such abuses of the practice as exhibited in this transcript may require the adoption of stringent rules. *471 We trust that this warning will be heeded and no further action required.
ANGSTMAN and CASTLES, JJ., concur.
BOTTOMLY, Justice.
I dissent in this case, for several reasons, including the reason that where no reciprocity, in truth and in fact exists, we should not continue to send money out of this country to Yugoslavia, a Communist controlled country, for use there in opposition to our form of government.
In In re Spoya's Estate (Olsen v. Ivancevic), 129 Mont. 83, 282 Pac. (2d) 452, I pointed out, in my dissent thereto, that in examining the evidence presented to prove reciprocity, the foreign heirs had failed to make a case. The Spoya case involved a death in 1949. In that case, as here, reciprocity concerned heirs residing in the country of Yugoslavia. Yugoslavia at that time and today is governed by the Communist Party. See Encyclopedia Britannica, 1958 Edition, and Britannica, 1959 year book, page 178.
Courts take judicial notice of declarations and decisions by our Secretary of State of the United States in relation to the form of government in foreign countries. The majority opinion in the Spoya case, supra, determined, that as of the date of death there involved, reciprocity of inheritance existed between the United States of America and the Communistic Federal Peoples Republic of Yugoslavia. The question here involved is whether reciprocity of inheritance and free transfer of such inherited money existed between the United States of America and Yugoslavia in May of 1955, as required by our law, and whether or not respondents established that fact by competent evidence.
The Spoya case does not control here and serves as no precedent at all upon this issue for the reasons that it expressly did not decide that reciprocity between the countries in question would exist in the future and the Montana statutes concerning reciprocity were changed in 1951 and 1953.
The law, as amended, now imposes upon the foreign heirs the burden of proving by competent evidence that (1) reciprocity of inheritance exists between the foreign country and the United States, and (2) that such foreign country places no restrictions whatever upon the movement of all the money or property belonging to the foreign heirs out of such foreign country to an heir, devisee and/or legatee residing in the United States.
The sole question presented on this appeal is whether the respondents presented competent evidence to sustain the burden of proof demanded of them by section 91-520, R.C.M. 1947. This is a mandate of the legislature.
The documentary evidence admitted is far too voluminous to review in detail. We think it should be noted that a great deal of it was incompetent and proved nothing as to the issue of this case. In fact, a document was introduced and admitted in evidence in this case which this court had held in the Spoya case, supra, was incompetent and not capable of admission in a court of law in Montana. Of course, the admission may have been a concession to the counsel for the Yugoslavia Government since he practices law, although not admitted to the Montana Bar, only infrequently in this state. The record herein sets a high of inadmissible exhibits and evidence.
For the record, I must comment upon a few of the principal documents presented by the foreign heirs to prove what the Montana law commands must be proved.
For proof of reciprocity of inheritance the respondents rely upon the following: A United States-Serbian Treaty of 1882 and the Constitution of Yugoslavia; The treaty is designated "The Treaty of Commerce and Navigation between Serbia and the United States." As to its legal effect in proving reciprocity, the Supreme Court of California in In re Arbulich's Estate, 41 Cal. (2d) 86, 257 Pac. (2d) 433, 437 (It should *472 be noted that this Arbulich's case went to the Supreme Court of the United States, 346 U.S. 897, 74 S.Ct. 219, 98 L.Ed. 398, where the appellant's certiorari was denied. Their motion for leave to file petition for rehearing thereon was likewise denied 347 U.S. 908, 74 S.Ct. 426, 98 L.Ed. 1066), said:
"Appellant contends, nevertheless, that the provisions of Article II of a treaty entered into in 1881 between the United States and the Kingdom of Serbia, 22 Stat. 964 (of which the present Republic of Yugoslavia is the successor government) and certified by the Secretary of State of the United States as remaining in full force and effect between this country and Yugoslavia, are applicable and controlling in appellant's favor on the issue of reciprocity. It may be noted that the first paragraph of Article II seemingly treats only of `citizens of the United States in Serbia [Yugoslavia] and Serbian [Yugoslav] subjects in the United States,' rather than as is the situation in the present case, of a United States citizen who dies in the United States and leaves property to a Yugoslav subject who is in Yugoslavia, and therefore is not here applicable." With this interpretation apparently the United States Supreme Court agreed.
The Constitution of Yugoslavia was admitted containing, the respondents contended, two important clauses respecting proof of reciprocity. This Constitution was also admitted in evidence in the Spoya case, supra. However, the respondent was forced to amend this contention when it was found the Yugoslav Constitution had been amended in 1953, and one of the provisions relied upon no longer existed. The other provision merely says the right of inheritance in Yugoslavia exists. This does not prove reciprocity. Even this concession may exist but is never an actuality. Have we forgotten how Hitler's government collected millions from the estates of decedents in this country and the heirs in Germany never collected a cent but such proceeds used to perfect Hitler's war machine?
In addition, the respondent introduced a document entitled a "Binding Interpretation of Yugoslavian Law by the Yugoslavian Supreme Court." This was issued without a lawsuit and without parties litigant. It reiterated the United States-Serbian Treaty was in full force and effect. Such decrees are common in Communistic dominated countries, such as Yugoslavia and Communist China, the courts decree the party desires. The treaty's legal effect was disposed of in the Arbulich case, supra, by the California Supreme Court and the Supreme Court of the United States.
To show that money may be transferred freely from Yugoslavia to the United States citizen who may inherit, the respondents relied upon (1) an agreement made between the Yugoslav Government and the United States of America in 1948, wherein it was agreed that the Yugoslav government would pay American citizens some $17,000,000 in settlement of claims of American property owners whose property had been nationalized. Reaching the terms of this agreement was facilitated by the fact that the United States had in its possession $47,000,000 worth of blocked Yugoslav gold at that time. The payment for nationalized property does not relate to free transfer of inherited property. (2) A receipt signed by one Geya Ronai, a resident of California, acknowledging he had received some $2,907.74 of a total of at least $5,000 he was to get from an estate in Yugoslavia. That is a very liberal discount, the government usually retains at least three fourths to one hundred percent of such accounts. The receipt was signed May 25, 1954. Plainly this heir had more money coming from this estate.
Yet this case was tried in the district court in 1957, and no proof was introduced that Ronai had ever received the rest of his inheritance. In addition the foreign heirs introduced a large number of decrees of Yugoslav courts showing that American heirs were decreed property from estates in Yugoslavia. Whether these were final decrees or not is not known. *473 However, the decree to Ronai is the only one close to the date of death pertinent here accompanied by a receipt. And Ronai was not shown to have received his full inheritance, and never will. The foreign heirs could not and did not prove their case. I must reiterate what I said in my dissent in the case of Olsen v. Spoya, supra, and add that since that dissent was written, the conduct of Communist Yugoslavia has proved that my contentions therein were well-founded. I would reverse the judgment of the district court and order that a judgment be entered escheating the undisposed of property of the decedent, all accumulated here under the protection of our laws, to the State of Montana for its school funds, its rightful owner.
ADAIR, Justice.
In my opinion the trial court's judgment should be reversed for the reasons stated in Mr. Justice Bottomly's above dissent in which I concur.