FILED

01/30/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0652

DA 15-0652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 13

STATE OF MONTANA,

>Plaintiff and Appellee,

v.

KOGAN J. SANTIAGO,

>Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 13-839
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

>For Appellant:

>>Chad Wright, Appellate Defender, Lisa K. Korchinski, Assistant Appellate Defender, Helena, Montana

>For Appellee:

>>Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

>>Scott D. Twito, Yellowstone County Attorney, Mary Leffers Barry, Christopher Morris, Deputy County Attorneys, Billings, Montana

>>>Submitted on Briefs:  November 15, 2017

>>>Decided:  January 30, 2018

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 A jury found Kogan J. Santiago (Santiago) guilty of sexual intercourse without consent. The Thirteenth Judicial District Court, Yellowstone County, sentenced Santiago to thirty years incarceration, with fifteen years suspended. Santiago appeals his conviction. We affirm and address the following issue:

> *Did the District Court abuse its discretion in giving the deadlocked jury an Allen-instruction?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The State charged Santiago with sexual intercourse without consent following an incident that occurred in April 2013. Santiago pleaded not guilty and the case proceeded to a jury trial. On the last day of trial, the jury began deliberations at 11:30 a.m. and shortly thereafter had lunch. At 4:00 p.m., the jury sent the Judge a note indicating it was deadlocked and could not form a unanimous decision. Specifically, the jury indicated its vote was eleven-to-one and that the one juror was unwilling to change his or her position.

¶3 In response, the State suggested the court provide an *Allen*-instruction, also frequently referred to as a dynamite-instruction. An *Allen*-instruction may be given to a deadlocked jury and is meant to encourage further jury deliberation. This Court specifically approved the State's requested *Allen*-instruction in *State v. Norquay*:

> The judicial process assigns tasks to the people involved in the case. It is the task of the witnesses to testify truthfully to the facts as they recall them. It is the task of the lawyers to prepare the case for final submission to the trier of the facts, the jury. It is the task of the Judge to preside, to instruct you as to the law, and to rule on whether certain evidence will be allowed at trial. It is the task of the jury to decide the case. You are not partisan nor are you advocates in this matter; you are neutral judges of the facts. It is you and you alone that can decide this cause. There is no reason to believe that any other

12 people would possess any more ability, intelligence, and courage to do the task assigned to a jury under the American system of justice.

The purpose of this instruction is to encourage you to collaborate with your fellow jurors in order to reach a just and fair verdict in this case. This instruction is not meant to coerce or to force a verdict. You should take as much time as needed in your deliberations.

You should not surrender your honest convictions in this matter for the mere purpose of returning a verdict or solely because of the opinion of other jurors. This does not mean, however, that you should avoid your task of rendering a verdict in this case.

This instruction is not more important than any other instruction I have previously given you. You should consider this instruction together with, and as part of, all the other instructions. Please return to your jury room and, again, diligently and earnestly resume your deliberations.

2011 MT 34, ¶ 43, 359 Mont. 257, 248 P.3d 817 (strikethroughs and emphases omitted).

¶4 Santiago objected to the *Allen*-instruction based on the fact that the jury's vote was eleven-to-one. He argued the instruction would put "an extreme undue burden" on the one juror in disagreement—that an *Allen*-instruction was only appropriate when multiple jurors disagreed, not a single juror. He contended it was coercive to "put[] eleven people in there to try to convince the one person," and that giving the instruction would put the one juror in an "awful position." Santiago also pointed to precedent from Arizona and Idaho finding *Allen*-instructions inherently coercive, and claimed that was particularly true in this case, where only one juror disagreed with eleven others.

¶5 The Judge acknowledged Santiago's objection as having merit under the circumstances of the case, but noted that this Court specifically approved the State's requested *Allen*-instruction in *Norquay*. Accordingly, the Judge gave the jury an instruction nearly identical to *Norquay*'s revised *Allen*-instruction. The Judge added,

3

"There's no magic time associated with this, but we do request that you give it another effort." After further deliberation, the jury still could not come to a unanimous decision and the court declared a mistrial.

¶6 Santiago's second jury trial occurred a few months later. Six hours into deliberation, the jury sent a note to the Judge asking when it could determine it was deadlocked because the jurors were unable to agree on a verdict. The jury did not indicate its current vote. The State again requested *Norquay*'s revised *Allen*-instruction. Santiago again objected, asking the Judge to accept the jury as deadlocked because the six-hour deliberation indicated that the jury had already diligently considered the case. The court noted Santiago's objection but proceeded to give the jury an instruction nearly identical to *Norquay*'s revised *Allen*-instruction. The jury deliberated further and ultimately found Santiago guilty. Santiago appeals from the guilty verdict of his second jury trial.

## STANDARD OF REVIEW

¶7 We review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. *State v. Smith*, 2005 MT 325, ¶ 20, 329 Mont. 526, 127 P.3d 353. A district court has broad discretion when instructing a jury and we only reverse if the instructions prejudicially affect the defendant's substantial rights. *State v. Myran*, 2012 MT 252, ¶ 16, 366 Mont. 532, 289 P.3d 118.

4

**DISCUSSION**

¶8    *Did the District Court abuse its discretion in giving the deadlocked jury an Allen-instruction?*

¶9    Defendants are constitutionally entitled to an uncoerced jury verdict. *Norquay*, ¶ 32. A jury instruction is coercive if it directs the minority of jurors to reconsider their views in light of the majority, instructs the jurors that they have to reach a decision, or pressures the jurors into returning a unanimous verdict. *Norquay*, ¶ 32 (citing *State v. Steele*, 2004 MT 275, ¶¶ 28-29, 323 Mont. 204, 99 P.3d 210; *State v. Randall*, 137 Mont. 534, 542, 353 P.2d 1054, 1058 (1960); and *Jenkins v. United States*, 380 U.S. 445, 445-46, 85 S. Ct. 1059, 1060 (1965)). The jury is ultimately responsible for carefully considering all of the facts presented at trial; it is not responsible for rendering a unanimous verdict regardless of the circumstances. *Norquay*, ¶ 42.

¶10    "Simply put, the court cannot place undue pressure upon the jury to reach a verdict." *Norquay*, ¶ 32. A court can, however, provide an *Allen*-instruction to a deadlocked jury. *See, e.g., Allen v. United States*, 164 U.S. 492, 501-02, 17 S. Ct. 154, 157 (1896) (holding, for the first time, that a trial court may give a deadlocked jury a supplemental instruction encouraging further deliberation). The instruction is meant to remind the jury of its responsibilities to consider the facts of the case, deliberate with one another, and attempt to reach a unanimous verdict. An appropriately-tailored *Allen*-instruction protects a defendant's right to an uncoerced jury verdict while ensuring a jury is properly encouraged to deliberate in an attempt to render a final verdict.

¶11 This Court first considered an *Allen*-instruction in *Randall*, 137 Mont. at 542, 353 P.2d at 1058, holding that an *Allen*-instruction cannot ask jurors in the minority to surrender their convictions and follow the majority. However, an *Allen*-instruction is generally not coercive and therefore permitted if it does not instruct the minority to reconsider its views in light of the majority or pressure the jury into rendering a unanimous verdict. *See, e.g., State v. Bieber*, 2007 MT 262, ¶¶ 69-70, 339 Mont. 309, 170 P.3d 444 (holding an *Allen*-instruction that did not unduly single out or pressure a dissenting juror was acceptable); *Steele*, ¶ 29 (holding that a bailiff's comments to a deadlocked jury to "find a common ground" and to "keep working on it" were not grounds for a mistrial because the comments did not attempt to pressure the jurors or tell the minority jurors their positions should change); *State v. Cline*, 170 Mont. 520, 538-40, 555 P.2d 724, 735-36 (1976) (holding an *Allen*-instruction was not objectionably coercive because it did not single out a minority juror or ask the juror to reexamine his views for the purpose of rendering a verdict, did not instruct the jury to deliberate until it reached a unanimous verdict, and did not instruct the jury that it had to reach a decision in the case).

¶12 In *Norquay*, we revised Montana's *Allen*-instruction, Montana Criminal Jury Instruction Number 1-121, included *supra* at ¶ 3, and instructed trial courts to use the new language in the future. *Norquay*, ¶ 43. We decided to remove any language from Montana's *Allen*-instruction about "efficient judicial administration" and the jury's verdict being its "final test" of the quality of its service. *Norquay*, ¶¶ 39, 43. We revised the instruction because we were concerned that such language was potentially coercive and

6

could be construed as requiring the jury "to make a determination of guilt or innocence, rather than to stay true to any individual convictions or opinions." *Norquay*, ¶¶ 40-43.

¶13　Santiago now argues that *Norquay*'s revised *Allen*-instruction is coercive and therefore unconstitutional. He specifically objects to language instructing the jury that it should "reach a just and fair verdict in this case" and that it "should [not] avoid [its] task of rendering a verdict in this case." He argues that a deadlocked jury could only construe such language to mean that it must return a unanimous verdict. Santiago notes that in his first trial, the one juror who did not change his mind after the *Allen*-instruction was a unique individual who did not give in to peer pressure. Santiago challenges the specific language of the instruction on the grounds that it forces the jury to reach a verdict when the jury has already diligently deliberated but could not come to a unanimous decision.

¶14　The State responds that the *Allen*-instruction was appropriately given because it is not coercive. The State emphasizes the fact that the instruction encourages the jurors to collaborate with one another, instructs the jurors to not surrender their honest convictions for the mere purpose of returning a verdict or solely because of the opinion of other jurors, and specifically tells the jury that the purpose of the instruction is not to force or coerce them to reach a verdict. The State notes that, in Santiago's first jury trial, the same *Allen*-instruction was given and yet the jury remained deadlocked and a mistrial necessarily declared. The State reasons that, read as a whole, *Norquay*'s revised *Allen*-instruction does not place undue pressure on jurors to forego their individual convictions for the purpose of reaching a verdict. We agree and take this opportunity to reaffirm *Norquay*'s revised *Allen*-instruction.

7

¶15   We first observe that Santiago specifically objects to two discrete parts of two sentences in *Norquay*'s revised *Allen*-instruction.  Read in context, Santiago objects to portions of the instruction that state: (1) "The purpose of this instruction is to encourage you to collaborate with your fellow jurors in order to reach a just and fair verdict in this case"; and (2) "You should not surrender your honest convictions in this matter for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  This does not mean, however, that you should avoid your task of rendering a verdict in this case." *Norquay*, ¶ 43.  The instruction further states that it is "not meant to coerce or to force a verdict" and encourages the jury to take as much time as it needs in its deliberations. *Norquay*, ¶ 43.  Considered in context, the language did not force the jury to reach a verdict, as Santiago argues.  The instruction is carefully worded to encourage the jury to collaborate and deliberate while not requiring a unanimous verdict.

¶16   An *Allen*-instruction furthers the belief that a juror's opinion may honestly change based on diligent deliberation with other members of the jury.  *Allen*, 164 U.S. at 501, 17 S. Ct. at 157.  Each juror should listen to the attorneys and witnesses, trusting his own judgment, and then earnestly discuss the case with the other jurors, as each person is equally honest and intelligent.  *Allen*, 164 U.S. at 501-02, 17 S. Ct. at 157.  The minority of jurors are not singled out by *Norquay*'s revised *Allen*-instruction and are not told to reconsider their views in light of the majority.  All jurors are instructed to deliberate further and encouraged to collaborate without surrendering their firm convictions.  The District Court appropriately read *Norquay*'s revised *Allen*-instruction to the jury in this case, where the jury was reportedly deadlocked after six hours of deliberation.  Following the jury's

guilty verdict, each member of the jury was polled and each person affirmed that the guilty verdict represented his or her own opinion. Further, we cannot construe *Norquay*'s revised *Allen*-instruction as forcing a unanimous verdict, as Santiago's first trial provides a clear example of a jury remaining deadlocked despite the instruction. We hold that the *Allen*-instruction did not objectionably coerce the jury or force it into a unanimous verdict and we accordingly affirm Santiago's conviction.

## CONCLUSION

¶17    *Norquay*'s revised *Allen*-instruction does not coerce a jury into rendering a verdict or require a jury to prioritize a unanimous decision over individual jurors' opinions. It also does not instruct jurors in the minority to reconsider their views in light of the majority. Instead, *Norquay*'s revised *Allen*-instruction appropriately encourages a deadlocked jury to continue deliberations while still protecting a defendant's right to an uncoerced jury verdict by encouraging jurors to stay true to their strongly held convictions. The District Court did not abuse its discretion in giving the deadlocked jury *Norquay*'s revised *Allen*-instruction. We affirm Santiago's conviction.


/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE

9