Justice Jim Rice delivered the Opinion of the Court.
***203 ¶ 1 Robert Allan Sweet appeals his conviction of operating a noncommercial vehicle with an alcohol concentration of 0.08 or more, or "DUI per se," in violation of § 61-8-406(1)(a), MCA (2015), following ***204 a jury trial in the Thirteenth Judicial District Court, Yellowstone County. He challenges the District Court's giving of a jury instruction. We affirm and address the following issue:
Did the District Court abuse its discretion by giving a "Norquay instruction" to the jury?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Near midnight on May 28, 2016, Billings Police Officer Nathan Contreraz encountered a vehicle in a gravel area alongside Central Avenue in Billings with "somebody's arm sticking out the window." The apparent driver was passed out, the keys were in the ignition, and the vehicle was running. Contreraz turned off the vehicle and wakened the driver, Defendant Sweet, who exhibited characteristics of excessive alcohol consumption and registered a .250 blood-alcohol level during later testing at the detention center. Sweet was charged with DUI per se, plead not guilty, and the case proceeded to a jury trial.
¶ 3 During the first day, the trial proceeded through the parties' case presentations, including the testimony of witnesses. By that point, Sweet no longer contested that his alcohol concentration was above the legal limit or that he was in control of the vehicle; rather, his defense narrowed to whether the graveled area along Central Avenue where his vehicle was located was a "way[ ] of this state open to the public" under § 61-8-406(1)(a), MCA. On the morning of the second day of trial, closing arguments were made by counsel and the District Court gave 17 instructions to the jury, including those addressing the elements of the offense of DUI per se, the burden of proof, and a definition for "ways of the state open to the public." Sweet did not object to any of the 17 instructions given by the court. The jury began deliberations at about 10:00 a.m.
¶ 4 At 12:20 p.m., the District Court met with counsel and Sweet because the jury had submitted two questions. The first question concerned the elements of DUI per se and the burden of proof. The second question concerned the definition of ways of the state open to the public. After discussion among the court and parties, the District Court provided the following written response to the jury's questions, to which neither party objected: "The Court cannot provide additional instructions. You may rely only on Instructions 1 through 17 previously given." The jury then continued their deliberations at about 12:28 p.m.
¶ 5 At 1:02 p.m., the District Court again met with counsel and Sweet because the jury had submitted a note, stating: "We, the jury, cannot reach a unanimous decision as to a verdict." The court asked the ***205 parties whether *914 Mont. Pattern Jury Instr. Crim. 1.121 (2009) should be offered, stating that such instructions have "been approved by the Montana Supreme Court in situations like this where a jury informs of a potential deadlock." The State argued the instruction should be given, with the caveat it should be modified as provided by this Court in State v. Norquay , 2011 MT 34, ¶ 43, 359 Mont. 257, 248 P.3d 817 ( Norquay instruction). The defense objected, asking the jury be given more time because it had been deliberating for just two and a half hours and had previously asked questions about some of the instructions. The District Court determined to give the Norquay instruction, reasoning the jury had "affirmatively stated they cannot reach a decision," the Norquay instruction would advise the jury to "consider not only the Norquay instruction but consider all of the instructions again and asks them simply to resume deliberations," and, as such, the instruction would not be prejudicial.
¶ 6 The District Court gave the Norquay instruction to the jury.[1] The jury then resumed its deliberations, and deliberated for approximately an hour before returning a unanimous guilty verdict finding Sweet guilty of DUI per se. Sweet was sentenced for felony DUI as a ***206 consequence of his five prior DUI convictions.
¶ 7 Sweet appeals.
STANDARD OF REVIEW
¶ 8 "We review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. A district court has broad discretion when instructing a jury and we only reverse if the instructions prejudicially affect the defendant's substantial rights." State v. Santiago , 2018 MT 13, ¶ 7, 390 Mont. 154, 415 P.3d 972 (citations omitted).
DISCUSSION
¶ 9 Did the District Court abuse its discretion by giving a "Norquay instruction" to the jury?
¶ 10 Defendants have a constitutional right to an uncoerced jury verdict. Santiago , ¶ 9. "A jury instruction is coercive if it directs the minority of jurors to reconsider their views in light of the majority, instructs the jurors that they have to reach a decision, or pressures the jurors into returning a unanimous verdict." Santiago , ¶ 9 (citations omitted). The jury "is not responsible for rendering a unanimous verdict regardless of the circumstances"; rather, "[t]he jury is ultimately responsible for carefully considering all of the facts presented at trial." Santiago , ¶ 9 (citations omitted). While the court "cannot place undue pressure upon the jury to reach a verdict," it can "provide an Allen -instruction to a deadlocked jury." Santiago , ¶ 10 (quotations and citations omitted); see , e.g. , *915 Allen v. United States , 164 U.S. 492, 501-02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896). Such an instruction reminds the jury of its obligation to "consider the facts of the case, deliberate with one another, and attempt to reach a unanimous verdict." Santiago , ¶ 10. A proper " Allen instruction" safeguards "a defendant's right to an uncoerced jury verdict while ensuring a jury is properly encouraged to deliberate" in order to deliver a final verdict. Santiago , ¶ 10. We have upheld Allen instructions as non-coercive as long as they do not instruct the minority to reconsider its views in light of the majority, pressure the jury into rendering a unanimous verdict, single-out a dissenting juror, instruct the jury to deliberate until it reached a unanimous verdict, or instruct the jury that it must reach a decision in the case. See State v. Randall , 137 Mont. 534, 353 P.2d 1054 (1960) ; State v. Cline , 170 Mont. 520, 555 P.2d 724 (1976) ; State v. Steele , 2004 MT 275, 323 Mont. 204, 99 P.3d 210 ; and State v. Bieber , 2007 MT 262, 339 Mont. 309, 170 P.3d 444.
¶ 11 Further, in Norquay , we revised Montana's Allen instruction, ***207 Mont. Pattern Jury Instr. Crim. 1.121 (2009), to remove coerciveness by eliminating mention of "efficient judicial administration" and the framing of a jury's verdict as the "final test" of its service. Norquay , ¶¶ 39, 43. The revisions addressed our concerns that "such language was potentially coercive and could be construed as requiring the jury 'to make a determination of guilt or innocence, rather than to stay true to any individual convictions or opinions.' " Santiago , ¶ 12 (quoting Norquay , ¶¶ 40-43 ). In Santiago , we upheld the Norquay instruction against another challenge, reasoning that it did not force the jury to reach a verdict or require a jury to prioritize a unanimous decision over individual jurors' opinions, but, rather, "is carefully worded to encourage the jury to collaborate and deliberate while not requiring a unanimous verdict" and "encourages a deadlocked jury to continue deliberations while still protecting a defendant's right to an uncoerced jury verdict by encouraging jurors to stay true to their strongly held convictions." Santiago , ¶¶ 15, 17.
¶ 12 Although not directly attacking the Norquay instruction given by District Court, Sweet makes a backhanded challenge to the instruction, describing it as "a strong-armed tactic to try to force a verdict from a potentially deadlocked jury," comparing it to disapproved jury directives used in such cases as Jenkins v. United States , 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (reversing where the trial judge told the jury, "You have got to reach a verdict"), and suggesting that Santiago be limited to its facts. In answer, the State argues "[i]t is settled law that a Norquay instruction is not coercive, but properly encourages jurors 'to deliberate further ... without surrendering their firm convictions,' " citing Santiago , ¶ 16, and that "Sweet has not shown that the Norquay instruction is objectively coercive on its face or under these facts."
¶ 13 The Norquay instruction given at Sweet's trial was virtually identical to the instruction we approved in Norquay and upheld in Santiago . It did not contain language instructing minority jurors to reconsider their views, nor use the "final test" language we disapproved. The instruction thus complied with the law in Montana. See Norquay , ¶ 37 ; Santiago , ¶ 17.
¶ 14 Sweet also argues that the District Court "acted too hastily when it gave the Norquay instruction." He notes the jury had been deliberating for less than three hours, argues from the jury's initial questions that it was "confused about at least two of the jury instructions," and draws an inference from a comment made by the trial judge on the morning of the first day of trial, during voir dire, that "every effort will be made to see that your time is not wasted," to assert ***208 the District Court was "strongly suggest[ing] to the jury that they needed to hurry up and deliver a verdict." Sweet also contends "the prosecutor was more interested in compelling a confused jury to make a decision by throwing down the gauntlet with a dynamite instruction."
¶ 15 We do not draw the same conclusions from the record that Sweet draws. The trial judge's remark during voir dire about not wanting to waste the jury's time was a general comment about the good faith effort with which the trial process was being undertaken, was not a jury instruction, and had no *916 contemplated connection, in our view, with the giving of a Norquay instruction at the end of the trial. Neither is there any record indication that, after the court answered the jury's initial questions by referring to the given instructions, to which neither party objected, the jury was left "confused" about the law. If anything, after that direction by the court, the jurors appeared able to apply the law in their continuing deliberations and their positions crystalized, leading to their message about an inability to unanimously agree. And, the prosecutor sought to insure the Norquay revisions, which removed coerciveness, were included in the pattern instruction.
¶ 16 What remains is Sweet's argument that the District Court gave the Norquay instruction too hastily. At trial, Sweet reasonably objected to the timing of the instruction, arguing, "I think, you know, they just need a little bit more time to discuss and come to that unanimous decision. If they come back again in an hour or two, then maybe we can consider giving them a Norquay instruction." Although Sweet primarily argues the District Court erred as a matter of law, resulting in a violation of his "right to an uncoerced verdict," trial courts have "broad discretion when instructing a jury," Santiago , ¶ 7, and we review the issue for abuse of discretion. While waiting longer to give a Norquay instruction, as advocated by Sweet at trial, would have likewise fallen within the District Court's discretion, we cannot conclude its determination to proceed as it did was an abuse of discretion. The case, as tried to the jury, had been narrowed to a contest over one element of the offense, i.e., whether Sweet was located on a way of the state open to the public. The jury had deliberated between two and a half to three hours before the instruction was given. As the State notes, the jury in Santiago's first trial, involving a charge of sexual intercourse without consent, deliberated for 3-4 hours before a Norquay instruction was given. Further, nothing in the record convinces us the jury was deliberating under coercive circumstances, and, in fact, it deliberated another hour after receiving the Norquay instruction. Following the verdict, each member of the jury was polled, and each one affirmed individually that the guilty verdict represented ***209 his or her own opinion. Thus, we conclude the District Court did not abuse its discretion in the timing of its giving of the Norquay instruction.
¶ 17 Affirmed.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.
¶ 18 Based on the standard of review, I agree with the Court that the District Court did not abuse its discretion in giving the Norquay instruction. Opinion, ¶¶ 13, 15. I write separately only to emphasize that the instruction, while not coercive or intended to force a verdict, is nonetheless a direction to the jury, as the County Attorney here characterized, which "basically throws the gauntlet down and says, look, you've got everything you need to make a decision." By its very language the instruction differs from other instructions when it directs the jury's attention to its service: you are to "return to your jury room and, again, diligently and earnestly resume your deliberations"; admonishes the jury that it should not avoid its "task of rendering a verdict in this case"; and encourages the jury members to collaborate with one another "to reach a just and fair verdict in this case." Santiago , ¶ 3 ; Norquay , ¶ 43.
¶ 19 I believe jurors take their oaths and obligations seriously and earnestly try to follow a judge's instructions. They should be encouraged and reminded of their obligations only as a last resort and when the record demonstrates that they have been given ample opportunity to deliberate. The Norquay instruction is not a meaningless instruction that tells the jury it has all the information it will receive; it reminds the jury of its oath and obligation to decide a case. As such, the instruction should be given sparingly when the record demonstrates that hope at reaching a verdict is not yet lost and that an *917 encouragement and reminder may help the jury resolve the case.
¶ 20 Here, the jury deliberated between two and one-half and three hours before the District Court gave the Norquay instruction. While I affirm based on the discretionary standard of review, I would caution that the Norquay instruction remains a powerful instruction that should only be given when necessary.
Justice Ingrid Gustafson joins in the concurring Opinion of Justice McKinnon.

The instruction given by the court stated:
The judicial process assigns tasks to the people involved in the case. It is the task of the witnesses to testify truthfully to the facts as they recall them. It is the task of the lawyers to prepare the case for final submission to the trier of the facts, the jury. It is the task of the judge to preside, to instruct you as to the law, and to rule on whether certain evidence will be allowed at trial. It is the task of the jury to decide the case.
You are not advocates in this matter, you are neutral judges of the facts. It is you and you alone that can decide this case. There is no reason to believe that any other 12 people would possess any more ability, intelligence and courage to do the task assigned to a jury under the American system of justice.
The purpose of this instruction is to encourage you to collaborate with your fellow jurors in order to reach a just and fair verdict in this case. This instruction is not meant to coerce or to force a verdict. You should take as much time as needed in your deliberations.
You should not surrender your honest convictions in this matter for the mere purpose of returning a verdict or solely because of the opinion of other jurors. This does not mean, however, that you should avoid your task of rendering a verdict in this case.
This instruction is not more important than any other instruction I have previously given-excuse me, this instruction is not more important than any other instruction I have previously given you. You should consider this instruction together with and as part of all the other instructions.
Please return to your jury room and again diligently and earnestly resume your deliberations. Thank you.