DA 11-0475

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 146

MEDICAL MARIJUANA GROWERS
ASSOCIATION, INC.; COURIER 1;
COURIER 2; CAREGIVER 1; CAREGIVER
2; AND CAREGIVER 3,

      Plaintiffs and Appellants,

  v.

ED CORRIGAN, COUNTY ATTORNEY
FOR THE COUNTY OF FLATHEAD,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV-11-338(C)
                  Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

           Timothy Baldwin, Baldwin Law Offices, PA, Kalispell, Montana

        For Appellee:

           Steve Bullock, Montana Attorney General, Tammy K Plubell, Assistant
           Attorney General, Helena, Montana

           Ed Corrigan, Flathead County Attorney, Tara Fugina, Deputy County
           Attorney, Kalispell, Montana

                                Submitted on Briefs:  May 9, 2012

                                        Decided:  July 6, 2012

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The Medical Marijuana Growers Association, Inc., Courier 1, Courier 2, Caregiver 1, Caregiver 2, and Caregiver 3 (collectively referred to as Plaintiffs) appeal from the Order and Rationale on Defendant's Motion for Summary Judgment (Order), entered by the Eleventh Judicial District Court of Flathead County, Montana. The Order determined that caregivers, as providers of medical marijuana to qualifying patients under Montana's 2009 Medical Marijuana Act, were not permitted to engage in marijuana transactions with or provide cultivation services to other caregivers or their agents or contractors.

¶2 We affirm.

## ISSUES

¶3 Plaintiffs raise two issues on appeal. We restate the issues as follows:

¶4 Does Montana's 2009 Medical Marijuana Act authorize caregivers to either exchange marijuana for purposes of supplying qualified patients with medical marijuana, or provide cultivation services to other caregivers for purposes of supplying qualified patients with medical marijuana?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Montana's Medical Marijuana Act (MMA), approved when voters passed the ballot initiative I-148 on November 2, 2004, allowed for the limited use of medical marijuana. The MMA was codified in §§ 50-46-101 to -210, MCA (2005).[1] Under the

---

[1] The MMA was amended in 2009 and again in 2011. The 2009 version of the MMA is the subject of Plaintiffs' appeal. Unless otherwise specified, all code references in this Opinion are to the 2009 Montana Code Annotated.

3

2009 statute, which was in effect at the time the alleged offenses took place, a "qualifying patient"—one with a "debilitating medical condition" and registered with the Department of Public Health and Human Services (DPHHS)—was allowed the limited use of marijuana to alleviate the symptoms or effects of the condition. Section 50-46-102(3), (5)(a), (8), (9), MCA.

¶6 Under § 50-46-102(1)(a), MCA, each qualifying patient could have one "caregiver" who was responsible for managing the well-being of the patient with respect to the medical use of marijuana. A caregiver was required to register with DPHHS and sign a statement "agreeing to provide marijuana only to qualifying patients who have named the applicant as caregiver." Section 50-46-103(4)(a)(i), MCA. A caregiver was not allowed "to engage in the use of marijuana or to use paraphernalia for any purpose other than cultivating, manufacturing, delivering, transferring, or transporting marijuana for medical use by a qualifying patient." Section 50-46-103(4)(a)(ii), MCA. A caregiver was also not allowed to possess more than six marijuana plants and one ounce of usable marijuana, nor was a caregiver allowed to acquire, possess, cultivate, manufacture, deliver, transfer, or transport marijuana in excess of that amount. Section 50-46-201(1)(a), (2), MCA. Caregivers who complied with the 2009 MMA were provided legal protections against arrest, prosecution, penalties, or denial of rights or privileges. Section 50-46-201(1), MCA. The 2009 MMA also allowed a caregiver to "receive reasonable compensation for services provided to assist with a qualifying patient's medical use of marijuana." Section 50-46-103(4)(c), MCA.

4

¶7 The Medical Marijuana Growers Association, Inc. (Growers Association)[2] is a non-profit corporation organized in Montana with a membership list representing approximately half of the caregivers and patients in Montana. Growers Association apparently lobbies the Montana Legislature about legal matters in connection to the MMA. Courier 1 is a resident and caregiver in Flathead County and Courier 2 is a resident and patient in Flathead County. Caregivers 1 and 2 are residents and caregivers in Flathead County and Caregiver 3 is a resident and caregiver in Cascade County.

¶8 On March 23, 2011, Plaintiffs filed a complaint in Montana's Flathead County District Court against the County Attorney, Ed Corrigan (Corrigan), seeking declaratory judgment that certain challenged activities could lawfully be performed by caregivers under Montana's 2009 MMA. Plaintiffs alleged in their complaint that Courier 1 and Courier 2 had been charged in criminal cases with possession of a dangerous drug with intent to distribute, in violation of § 45-9-103, MCA, for allegedly possessing and transporting marijuana on behalf of Caregiver 3.[3] They further alleged that Caregivers 1, 2, and 3 are "potential witnesses and participant actors in the criminal cases," although none of the Caregivers faced criminal charges at the time.

¶9 In their complaint Plaintiffs sought a determination that the 2009 MMA allowed a caregiver to "deliver, transport or transfer marijuana and its paraphernalia to another

[2] This corporation is referred to as Medical Marijuana Growers Association, Inc., Montana Medical Growers Association, Inc., and Montana Marijuana Growers Association, Inc. throughout the record and briefing. We refer to it as Growers Association throughout this Opinion.

[3] Although this does not appear of record in the proceeding before us, the parties indicate in their briefs that Courier 1 and Courier 2 have pled guilty to the charges under a plea agreement and possibly reserved the right to appeal the legal issues as presented in this case.

caregiver" or to another caregiver through an agent, and that it allowed a caregiver to "cultivate and manufacture marijuana as an agent or contractor for another caregiver." Without these allowances, Plaintiffs argued, they would be unable to comply with their duties as caregivers under the MMA. The individual Plaintiffs sought to remain anonymous so as to avoid self-incrimination based on the statements made in this action and to preserve their right to remain silent in the event of prosecution and conviction.

¶10 Corrigan filed an answer, and on April 19, 2011, he moved for summary judgment, arguing that the plain language of the 2009 MMA makes clear that caregiver-to-caregiver transactions are not permitted. Corrigan cited the requirement that caregivers agree that they will "provide [medical] marijuana only to qualifying patients who have named the applicant as caregiver," and as such, the extensive statutory interpretation requested by the Plaintiffs was unnecessary. Section 50-46-103(4)(a)(i), MCA. Plaintiffs responded with a motion for summary judgment and an accompanying brief, and Corrigan filed a reply brief on June 1, 2011.

¶11 The District Court heard oral argument on July 6, 2011, and in its Order granted Corrigan's motion for summary judgment on July 21, 2011. The court concluded that the 2009 MMA "does not permit a caregiver to deliver, transport, or transfer marijuana and its paraphernalia to another caregiver, either individually or through an agent or contractor; nor does it permit a caregiver to cultivate and manufacture marijuana as an agent or contractor for another caregiver." The court entered judgment to the same effect on August 17, 2011, dismissing the case and noting the Order's denial of Corrigan's request for fees and costs. Plaintiffs appealed.

6

¶12    After the appellate briefs were filed, this Court ordered supplemental briefing. We noted that the new Montana Marijuana Act (2011 MMA), Title 50, chapter 46, part 3, MCA (2011), took effect on July 1, 2011.[4] It repealed the 2009 MMA and set forth new regulations and requirements for participants in the medical marijuana program. We directed the parties to submit briefs addressing the possibility that the declaratory action was moot as a consequence of the repeal of the 2009 MMA. The parties submitted the requested briefs.

## STANDARD OF REVIEW

¶13    This Court reviews a district court's grant of summary judgment de novo, applying the criteria in M. R. Civ. P. 56. *Wiser v. Mont. Bd. of Dentistry*, 2011 MT 56, ¶ 6, 360 Mont. 1, 251 P.3d 675 (citations omitted). "Summary judgment may be granted only when there is a complete absence of genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Wiser*, ¶ 6 (quoting *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 37, 345 Mont. 12, 192 P.3d 186).

¶14    This Court reviews a district court's interpretation of law pertaining to a declaratory judgment ruling for correctness. *Wrigg v. Junkermier, Clark, Campanella, Stevens, P.C.*, 2011 MT 290, ¶ 9, 362 Mont. 496, 265 P.3d 646 (citing *In re Estate of Marchwick*, 2010 MT 129, ¶ 8, 356 Mont. 385, 234 P.3d 879).

## DISCUSSION

¶15    *Does Montana's 2009 Medical Marijuana Act authorize caregivers to either exchange marijuana for purposes of supplying qualified patients with medical*

---

[4] All of Title 50, chapter 46, part 3, MCA (2011), became effective on July 1, 2011, with the exception of § 50-46-341, MCA (2011), which became effective on May 13, 2011.

*marijuana, or provide cultivation services to other caregivers for purposes of supplying qualified patients with medical marijuana?*

¶16    On appeal, Plaintiffs seek a determination that the 2009 MMA allows a caregiver to "dispense marijuana to his own patients, [and] perform other services such as acquisition, possession, cultivation, manufacture, delivery, transfer, or transportation with respect to any qualifying patient, including to a caregiver on behalf of another qualifying patient." Plaintiffs argue that this appeal is not moot, as the repeal of the 2009 MMA does not eliminate the possibility of criminal prosecution under the 2009 MMA against those involved in this case.

¶17    Corrigan argues that this matter is moot, as the 2011 MMA's "repeal and overhaul of the 2009 MMA expressly prohibits caregiver to caregiver transactions," and thus the situation in question cannot be repeated. Corrigan also argues that the Plaintiffs are not challenging the constitutionality of the criminal statute under which they were charged, and that there is no imminent threat to their constitutional rights. Corrigan further states that if the right to appeal their criminal cases was preserved by Courier 1 or Courier 2, they can proceed with an appeal, and that the possibility of future criminal charges against the other Plaintiffs is highly speculative, as they have not been charged with criminal offenses related to medical marijuana and the record does not reflect they likely will be charged.

¶18    We address mootness first, as "[m]ootness is a threshold issue which must be resolved before addressing the underlying dispute." *Povsha v. City of Billings*, 2007 MT 353, ¶ 19, 340 Mont. 346, 174 P.3d 515. We have "consistently held that 'a moot

8

question is one which existed once but because of an event or happening, it has ceased to exist and no longer presents an actual controversy.' " *Povsha*, ¶ 19 (quoting *Skinner Enters., Inc. v. Lewis and Clark City-Co. Health Dept.*, 1999 MT 106, ¶ 12, 294 Mont. 310, 980 P.2d 1049). A case becomes moot for the purposes of appeal when "by a change of circumstances prior to the appellate decision, the case has lost any practical purpose for the parties, [such as when] the grievance that gave rise to the case has been eliminated." *Povsha*, ¶ 19 (quoting *In re T.J.F.*, 229 Mont. 473, 475, 747 P.2d 1356, 1357 (1987)).

¶19 The Plaintiffs argue against a finding that the 2011 MMA moots their request for declaratory relief, arguing that they could still be charged or their convictions upheld under the 2009 law. They argue that under § 1-2-205, MCA, those who allegedly violated the 2009 MMA while it was in effect could face prosecution for a criminal offense under the 2009 MMA, even though it has since been repealed. Section 1-2-205, MCA, states:

> The repeal of any law creating a criminal offense does not constitute a bar to an indictment or information and the punishment of an act already committed in violation of the law so repealed unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act.

¶20 We have held that "[p]ersons alleged to have committed criminal offenses must be charged with violating the law in effect at the time the crime was committed." *State v. Daniels*, 2003 MT 30, ¶ 17, 314 Mont. 208, 64 P.3d 104 (citing *State v. Cline*, 170 Mont. 520, 532, 555 P.2d 724, 732 (1976)). "Furthermore, a change in the definition of an offense does not affect acts committed prior to the effective date." *Daniels*, ¶ 17. Citing

9

§ 1-2-205, MCA, *Daniels* held that the defendant, who committed his offense between January 1996 and June 1999 and was charged in November 1999, was properly charged and convicted under the definition of the offense in effect at the time he committed the crime, though the statutory definition of the offense had changed on October 1, 1999. *Daniels*, ¶¶ 5, 13, 17, 18. This necessarily imparts that the law in effect at the time of the commission of the crime controls throughout the prosecution of the crime.

¶21 The 2011 MMA does not expressly bar an indictment or information from being brought under the 2009 law. The alleged events involving the Plaintiffs took place on approximately February 4, 2011, and thus would be subject to prosecution under the 2009 MMA, as the 2011 MMA was not effective until July 1, 2011. Because a felony prosecution may be commenced up to five years from the date of the alleged offense and prosecuting attorneys have discretion as to what and who they charge, the caregivers could theoretically still be charged through February 2016 with felony offenses under the 2009 MMA. Section 45-1-205(2)(a), MCA; *State v. Lemmon*, 214 Mont. 121, 126, 692 P.2d 455, 457-58 (1984). Thus, the issue on appeal has not been mooted by repeal of the 2009 MMA.

¶22 In response to Corrigan's contention that the relief sought is speculative and not justiciable, Plaintiffs argue that this is an appropriate case for relief under the Uniform Declaratory Judgments Act (UDJA), §§ 27-8-101 to -313, MCA. The purpose of the UDJA is "to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Section 27-8-102, MCA.

10

¶23    The UDJA, addressing the scope of power to render a declaratory judgment, states:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.  No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.  The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

Section 27-8-201, MCA.  As for who may obtain a declaratory judgment, the UDJA states:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Section 27-8-202, MCA.  Because Plaintiffs deem themselves insecure with respect to their legal status vis a vis the 2009 MMA, at least two of the Plaintiffs have already faced criminal charges, and the UDJA allows a court to declare their status even though no further relief is claimed, we are constrained to agree that Plaintiffs may seek the relief requested under the UDJA.  We therefore conclude the controversy is justiciable, and turn to the merits of Plaintiffs' arguments.

¶24    We are asked to determine whether the 2009 MMA authorizes caregivers, for purposes of supplying qualified patients with medical marijuana, to exchange marijuana with or provide cultivation services to other caregivers.  To do so, we first look to the plain language of the statute as a whole to determine if it is clear and unambiguous.

11

*Mont. Sports Shooting Assn. v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. We will ascertain and declare what is in the terms or their substance, and we will not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.

¶25 Marijuana is a Schedule I controlled substance under § 50-32-222(4)(t), MCA. It is considered a dangerous drug under §§ 50-32-101(6), -202, MCA, and is generally illegal to distribute or possess, pursuant to §§ 45-9-101, -102, MCA. Distribution includes selling, bartering, exchanging, giving away, or offering to sell, barter, exchange, or give away. Section 45-9-101(1), MCA. The 2009 MMA provides exceptions to the illegality of distribution and possession, establishing certain privileges for those in compliance with its provisions.

¶26 The 2009 MMA defines a "caregiver" as "an individual, 18 years of age or older who has agreed to undertake responsibility for managing the well-being of a person with respect to the medical use of marijuana. A qualifying patient may have only one caregiver at any one time." Section 50-46-102(1)(a), MCA. A "qualifying patient or caregiver is presumed to be engaged in the medical use of marijuana if the qualifying patient or caregiver is in possession of a registry identification card." Section 50-46-201(3)(a)(i), MCA. A registry identification card is a document issued by DPHHS that identifies a person as a qualifying patient or a caregiver. Section 50-46-102(9), MCA. In order to obtain a registry identification card, the caregiver is required to sign a statement, as the caregiver for the qualifying patient:

> (i) agreeing to provide marijuana *only* to qualifying patients who have named the applicant as caregiver; and

(ii) acknowledging that possession of the registry identification card does not allow the caregiver to engage in the use of marijuana or to use paraphernalia for any purpose other than cultivating, manufacturing, delivering, transferring, or transporting marijuana *for medical use by a qualifying patient*.

Section 50-46-103(4)(a), MCA (emphasis added).

¶27 We find the plain language of this statute clear and unambiguous. A caregiver is authorized to provide marijuana to qualifying patients only. The 2009 MMA does not provide for the transfer of marijuana or paraphernalia from caregiver to caregiver or among their agents, nor is there a provision allowing for a caregiver to cultivate marijuana for other caregivers or for their agents or contractors. We will not read or insert these provisions into the statute. We find that the specific provision that a caregiver may provide marijuana *only* to qualifying patients specifically prohibits the privileges and declarations that the Plaintiffs seek. As the District Court correctly stated,

> [T]he Court must point out a serious impediment to the relief Plaintiffs are seeking: All of Plaintiffs' arguments are predicated on the assumption that the Act is ambiguous with respect to whom caregivers may and may not supply with marijuana. Were there such an ambiguity, Plaintiffs' arguments, to varying extents, might go a long ways toward resolving it. However, no such ambiguity exists; rather, the clear and unambiguous language of [the] Act permits caregivers "to provide marijuana *only to qualifying patients who have named the applicant as caregiver.*" § 103(4)(a)(ii). The intention evinced by this language is straightforward. Entertaining Plaintiffs' invitation to engage in further interpretation of the Act would necessarily entail turning a blind eye to one of its explicit provisions. This the Court may not do.

¶28 Plaintiffs argue that such a restrictive reading of the 2009 MMA renders performance under the MMA an impossibility, as caregivers must be able to initially acquire their marijuana from *some* source in order to commence cultivation and fulfill

13

their duties as caregivers. We decline the invitation to engage in the expansive interpretation of the 2009 MMA urged by Plaintiffs, as it is simply unsupportable under the plain language of the statute.

¶29    Therefore, we affirm the determination of the District Court that the 2009 MMA does not permit the exchange of marijuana among caregivers, nor does it permit a caregiver to cultivate or manufacture marijuana for another caregiver.

**CONCLUSION**

¶30    Based on the foregoing, we affirm the Order of the District Court.


                                                    /S/ PATRICIA COTTER


We concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BETH BAKER


Justice James C. Nelson, concurring.

¶31    I concur in the Court's decision, which I believe correctly resolves the issues as they were presented and argued on appeal. I write separately to acknowledge the proverbial elephant in the room.

¶32    This case is just one of several presently pending before this Court involving Montana's "medical marijuana" laws. While issues of justiciability have arisen, such as

14

the mootness question the Court addresses in today's Opinion, the parties in these cases have largely ignored—intentionally, it would seem, in light of the colloquy between the Court and counsel during oral argument in *Mont. Cannabis Indus. Assn. v. State*, No. DA 11-0460 (May 30, 2012)—the more fundamental question whether it is even appropriate for this Court to render opinions interpreting laws that are essentially unenforceable in light of federal law.

¶33    The courts of Montana do not have the power to issue advisory opinions. *Plan Helena, Inc. v. Helena Regl. Airport Auth. Bd.*, 2010 MT 26, ¶¶ 9, 11, 355 Mont. 142, 226 P.3d 567.  This is because the judicial power of Montana's courts is limited by the Montana Constitution to "justiciable controversies."  *Plan Helena*, ¶ 6.  A justiciable controversy is one that is "definite and concrete, touching legal relations of parties having adverse legal interests" and "admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Reichert v. State*, 2012 MT 111, ¶ 53, 365 Mont. 92, 278 P.3d 455 (internal quotation marks omitted).  To be justiciable the controversy must, among other things, "be one upon which a court's judgment will effectively and conclusively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical, or academic conclusion." *Reichert*, ¶ 53.  The "cases" and "controversies" that are within the judicial power to determine do not include "abstract differences of opinion." *Plan Helena*, ¶ 9 (internal quotation marks omitted).

¶34 In 2004, Montanans adopted Initiative No. 148 which created the "Medical Marijuana Act." *See* Title 50, chapter 46, MCA (2005). The Legislature has since tinkered with the Act, *see* Opinion, ¶ 5 n. 1, going so far as to scrap the original voter-approved scheme entirely and replace it with a new and improved "Montana Marijuana Act," *see* Laws of Montana, 2011, ch. 419; Title 50, chapter 46, part 3, MCA (2011). Yet, with due respect to, and without impugning the zeal and good faith of, everyone involved in this continuing fiasco, the fact remains that the medical marijuana laws seek to legalize conduct that is violative of the federal Controlled Substances Act, 84 Stat. 1242, 21 U.S.C. § 801 et seq. And it is axiomatic that federal laws prevail over contrary state laws. U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *Gonzales v. Raich*, 545 U.S. 1, 29, 125 S. Ct. 2195, 2212 (2005) ("[L]imiting the activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place respondents' activities beyond congressional reach. The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

¶35 It may be true, as some medical marijuana proponents argue, that marijuana is a safe and effective drug, that marijuana should be legalized, that there are ridiculously high numbers of people incarcerated for marijuana-related offenses, that people have the "right" to use marijuana to treat illness, and that there should be medical marijuana

16

growers and caregivers. But these issues are completely beside the point. The point, rather, is that Congress has decreed—rightly or wrongly, and whether the Montana populace likes it or not—that marijuana is a controlled substance and that it is unlawful to grow, possess, or distribute it.[1]

¶36 When Montana's courts are asked to interpret the 2004 Medical Marijuana Act and the 2011 Montana Marijuana Act, they are asked, in effect, to issue an opinion "advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition," *Reichert*, ¶ 53 (internal quotation marks omitted), the hypothetical state of facts being a world where the grower, caregiver, or user is not already precluded by federal law from growing, distributing, or possessing marijuana. Irrespective of whether the conduct at issue is exempt from prosecution under Montana law, it is unlawful under federal law. A decree in favor of the medical marijuana grower, caregiver, or user is consequently meaningless because their activities are illegal regardless.

¶37 Judicial officers (as well as members of the legislative and executive branches) take an oath to "support, protect and defend the constitution of the United States . . . ." Mont. Const. art. III, § 3. The Constitution of the United States provides, among other things, that "the Laws of the United States . . . shall be the supreme Law of the Land; *and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*" U.S. Const. art. VI, cl. 2 (emphasis

---

[1] Marijuana is classified as a Schedule I drug because of its high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment. *Gonzales*, 545 U.S. at 14, 125 S. Ct. at 2204 (citing 21 U.S.C. § 812(b)(1), (c)). This classification renders the manufacture, distribution, or possession of marijuana a criminal offense. *Gonzales*, 545 U.S. at 14, 125 S. Ct. at 2204.

added). This Court is thus bound by duly enacted federal law. Providing interpretations of Montana laws that are clearly contrary to federal laws in the conduct they purport to make legal is in tension with our oath and duty to adhere to the federal laws. Providing such interpretations is also in tension with the constitutional limitation on judicial power precluding us from rendering advisory opinions. For these reasons, I conclude that Montana's courts should not—indeed cannot—be required to issue opinions concerning state medical marijuana laws that are trumped by federal law and are mooted by reason of the Supremacy Clause.[2]

¶38 In closing, I note that for the marijuana community—medical, commercial, and recreational—there is a solution to the problem. If the anti-marijuana paradigm is to be changed, it must be changed at the federal level first. It is Congress that has enacted federal laws making marijuana manufacture, distribution, and possession a criminal offense and, in the process, rendering any state laws "to the Contrary" superfluous. Obviously, changing this paradigm will involve educating Congress and whoever is President[3] and will require concerted political efforts nationwide to elect supportive legislators and not to reelect senators, representatives, and executives who are opposed to changing the marijuana paradigm.

---

[2] I note one exception. Where the State has in fact commenced a civil or criminal proceeding in which one of Montana's medical marijuana laws may provide a defense, and the defendant seeks dismissal or mounts a defense based on that law, it may then be necessary for this Court to interpret the medical marijuana laws within this specific context.

[3] I acknowledge this will be a herculean task. Indeed, actual facts, scientific evidence, and medical evidence typically fall on deaf ears in Congress when partisan politics, big money, big business, or big religion hold sway—big Tobacco, big Pharma, and big Super PACs being the big examples that readily come to mind.

¶39 In summary, the courts of Montana should not be required to devote any more time trying to interpret and finesse state laws that, ultimately, are contrary to federal law and the Supremacy Clause of the United States Constitution. After all, as already noted, judges in Montana take an oath to support, protect, and defend the federal Constitution and are bound by federal laws, anything in the laws of this State to the contrary notwithstanding. On this issue, it is time we started doing that.

¶40 I concur.

/S/ JAMES C. NELSON